AMERICAN PIPE & CONSTRUCTION CO. ET AL.
*v.* UTAH ET AL.

No. 72–1195.   Argued November 12, 1973—
Decided January 16, 1974

STEWART, J., delivered the opinion for a unanimous Court. BLACKMUN, J., filed a concurring opinion, *post*, p. 561.

*Jesse R. O'Malley* argued the cause for petitioners. With him on the briefs were *Gordon Johnson, Oliver F. Green, Jr., James O. Sullivan, Wayne M. Pitluck, John J. Hanson, Robert E. Cooper, Haldor T. Benson,* and *Read Carlock.*

*Gerald R.. Miller,* Special Assistant Attorney General of Utah, argued the cause for respondents. With him on the brief were *Vernon B. Romney,* Attorney General, and *J. Rand Hirschi* and *Kent Shearer,* Special Assistant Attorneys General.

MR. JUSTICE STEWART delivered the opinion of the Court.

This case involves an aspect of the relationship between a statute of limitations and the provisions of Fed. Rule Civ. Proc. 23 regulating class actions in the federal courts. While the question presented is a limited one, the details of the complex proceedings, originating almost a decade ago, must be briefly recounted.

On March 10, 1964, a federal grand jury returned indictments charging a number of individuals and companies, including the petitioners here, with criminal violations of § 1 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. § 1. The indictments alleged that the defendants combined and conspired together in restraint of trade in steel and concrete pipe by submitting collusive and rigged bids for the sale of such pipe and by dividing and allocating business among themselves. Shortly thereafter, on June 19, 1964, pleas of *nolo contendere* were accepted and judgments of guilt were entered. Four days later, on June 23, 1964, the United States filed civil complaints in the United States District Court for the Central District of California against the same companies, which complaints, as subsequently amended, sought to restrain further violations of the Sherman Act and violations of the Clayton and False Claims Acts. These civil actions were the subject of extended negotiations between the Government and the defendants which culminated in a "Final Judgment," entered on May 24, 1968, in which the companies consented to a decree en-

joining them from engaging in certain specified future violations of the antitrust laws.[1]

Eleven days short of a year later, on May 13, 1969, the State of Utah commenced a civil action for treble damages against the petitioners in the United States District Court for the District of Utah, claiming that the petitioners had conspired to rig prices in the sale of concrete and steel pipe in violation of § 1 of the Sherman Act. The suit purported to be brought as a class action in which the State represented "public bodies and agencies of the state and local government in the State of Utah who are end users of pipe acquired from the defendants" and also those States in the "Western Area" which had not previously filed similar actions. This action was found to be timely under the federal statute of limitations governing antitrust suits [2] because of the provision of § 5 (b) of the Clayton Act, 38 Stat. 731, as amended, 15 U. S. C. § 16 (b), which states that

"[w]henever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, . . . the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended

[1] Consent decrees binding each of the petitioners other than American Pipe & Construction Co. were entered on December 8, 1967; however, in an earlier action the District Court in Arizona determined that the "Final Judgment" entered on May 24, 1968, was final as to all petitioners. *Maricopa County* v. *American Pipe & Construction Co.*, 303 F. Supp. 77, 87 (1969).

[2] Section 4B of the Clayton Act, 15 U. S. C. § 15b, provides in pertinent part as follows:

"Any action to enforce any cause of action [under the antitrust laws] shall be forever barred unless commenced within four years after the cause of action accrued."

during the pendency thereof and for one year thereafter . . . ." [3]

Since the Government's civil actions against the petitioners had ended in a consent judgment entered on May 24, 1968, Utah's suit, commenced on May 13, 1969, was timely under § 5 (b), with 11 days to spare.[4]

On a motion made by the majority of the petitioners, the suit was subsequently transferred by the Judicial Panel on Multidistrict Litigation from Utah to the United States District Court for the Central District of California for trial by Judge Martin Pence, Chief Judge of the District of Hawaii, sitting in the California District by assignment. The transfer and assignment were found appropriate because of the prior concentration of more than 100 actions arising out of the same factual situation in the Central District of California before Judge Pence. *In re Concrete Pipe,* 303 F. Supp. 507, 508–509 (JPML 1969).

In November 1969 the petitioners moved for an order pursuant to Fed. Rule Civ. Proc. 23 (c)(1) that the suit could not be maintained as a class action.[5] This motion

---

[3] The section contains the additional proviso that

"whenever the running of the statute of limitations . . . is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued."

[4] The petitioners had earlier argued that since there was a four-day hiatus between the entry of judgment on the pleas of *nolo contendere* in the criminal actions and the commencement of the Government civil suit, the tolling period provided by § 5 (b) should have begun to run from the termination of the criminal proceedings. This contention was rejected in *Maricopa County* v. *American Pipe & Construction Co., supra,* at 83–86, and has not been pressed here.

[5] Subdivision (c)(1) of Rule 23 provides:

"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be

was subsequently granted. In his memorandum opinion in support of the order granting the motion Judge Pence found that those "Prerequisites to a class action" contained in Rule 23 (a)(2) through (4) appeared to have been met, or at least that minor deficiencies in meeting those standards for determining the suitability of proceeding as a class would "not be fatal to the plaintiffs' class action." 49 F. R. D. 17, 20.[6] But the requirement of Rule 23 (a)(1) that "the class [be] so numerous that joinder of all members is impracticable" was found by Judge Pence not to be satisfied: While the complaint had alleged that the members of the class totaled more than 800, Judge Pence, relying on his extensive experience in dealing with litigation involving the same defendants and similar causes of action, concluded that the number of entities which ultimately could demonstrate injury from the trade practices of the petitioners was far lower, and, further, that "[f]rom prior actual experience in like cases involving the same alleged conspiracy, this court could not find that number so numerous that joinder of all members was impracticable . . . . " 49 F. R. D., at 21.

On December 12, 1969, eight days after entry of the order denying class action status,[7] the respondents, con-

conditional, and may be altered or amended before the decision on the merits."

[6] The "Prerequisites to a class action" listed in subdivision (a) of Rule 23 are as follows:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

[7] While the memorandum in support of the order denying class action status was dated December 17, 1969, the order itself was filed on December 4, 1969.

sisting of more than 60 towns, municipalities, and water districts in the State of Utah, all of which had been claimed as members of the original class, filed motions to intervene as plaintiffs in Utah's action either as of right, under Rule 24 (a)(2) [8] or, in the alternative, by permission under Rule 24 (b)(2),[9] and for other relief not pertinent here. On March 30, 1970, the District Court denied the respondents' motion in all respects, concluding that the limitations period imposed by § 4B of the Clayton Act, as tolled by § 5 (b), had run as to all these respondents and had not been tolled by the institution of the class action in their behalf. 50 F. R. D. 99.

On appeal, the Court of Appeals for the Ninth Circuit affirmed as to the denial of leave to intervene as of right under Rule 24 (a)(2), but, with one judge dissenting, reversed as to denial of permission to intervene

---

[8] "Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

[9] "Permissive intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

under Rule 24 (b)(2).[10]   473 F. 2d 580.   Finding that. "as to members of the class Utah purported to represent, and whose claims it tendered to the court, suit was actually commenced by Utah's filing," the appellate court concluded that "[i]f the order [denying class action status], through legal fiction, is to project itself backward in time it must fictionally carry backward with it the class members to whom it was directed, and the rights they presently possessed.   It cannot leave them temporally stranded in the present."   *Id.*, at 584.   We granted certiorari to consider a seemingly important question affecting the administration of justice in the federal courts.   411 U. S. 963.

# I

Under Rule 23 as it stood prior to its extensive amendment in 1966, 383 U. S. 1047–1050, a so-called "spurious" class action could be maintained when "the character of the right sought to be. enforced for or against the class is . . . several, and there is a common question of law or fact affecting the several rights and a common relief is sought." [11]   The Rule, however, contained no mechanism

---

[10] As originally filed, the respondents' motions to intervene included allegations based on events occurring during the four years prior to December 12, 1969, the date of the filing of the motions.   The denial of leave to intervene did not apply to these allegations, which were still timely as to the respondents even under the District Court's order, and the order was thus not appealable as a final order under 28 U. S. C. § 1291.   Furthermore, in the same order the court declined to certify the question of the tolling effect of the class action as an appealable order under 28 U. S. C. § 1292 (b).   50 F. R. D. 99, 109–110.   The respondents subsequently amended their complaint to confine its allegations to events more than four years prior to the filing of their motions, thereby making the court's order final as to them and permitting immediate appeal under 28 U. S. C. § 1291.

[11] Original Rule 23 provided as follows:

"(a) Representation.   If persons constituting a class are so numerous as to make it impracticable to bring them all before the

for determining at any point in advance of final judgment which of those potential members of the class claimed in the complaint were actual members and would be bound by the judgment. Rather, "[w]hen a suit was brought by or against such a class, it was merely an invitation to joinder—an invitation to become a fellow traveler in the litigation, which might or might not be accepted." 3B J. Moore, Federal Practice ¶ 23.10 [1], p.

court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought.

"(b) Secondary action by shareholders. In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the complaint shall be verified by oath and shall aver (1) that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law and (2) that the action is not a collusive one to confer on a court of the United States jurisdiction of any action of which it would not otherwise have jurisdiction. The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort.

"(c) Dismissal or compromise. A class action shall not be dismissed or compromised without the approval of the court. If the right sought to be enforced is one defined in paragraph (1) of subdivision (a) of this rule notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. If the right is one defined in paragraphs (2) or (3) of subdivision (a) notice shall be given only if the court requires it."

23–2603 (2d ed.). Cf. *Snyder* v. *Harris*, 394 U. S. 332, 335; *Zahn* v. *International Paper Co., ante*, at 296 and n. 6. A recurrent source of abuse under the former Rule lay in the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests. If the evidence at the trial made their prospective position as actual class members appear weak, or if a judgment precluded the possibility of a favorable determination, such putative members of the class who chose not to intervene or join as parties would not be bound by the judgment. This situation—the potential for so-called "one-way intervention"—aroused considerable criticism upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one.[12] The 1966 amendments were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments.[13]

Under the present Rule, a determination whether an action shall be maintained as a class action is made by the court "[a]s soon as practicable after the commencement of an action brought as a class action . . . ." Rule 23 (c)(1).[14] Once it is determined that the action may be maintained as a class action under subdivision

---

[12] See, *e. g.*, Kalven & Rosenfield, The Contemporary Function of the Class Suit, 8 U. Chi. L. Rev. 684 (1941); Developments in the Law—Multiparty Litigation in the Federal Courts, 71 Harv. L. Rev. 874, 935 (1958); 2 W. Barron & A. Holtzoff, Federal Practice & Procedure § 568 (C. Wright ed. 1961).

[13] See Advisory Committee's Note to Proposed Rule 23 of Rules of Civil Procedure, 28 U. S. C. App., pp. 7765, 7768.

[14] See n. 5, *supra*.

548

(b)(3),[15] the court is mandated to direct to members of the class "the best notice practicable under the circumstances" advising them that they may be excluded from the class if they so request, that they will be bound by the judgment, whether favorable or not if they do not request exclusion, and that a member who does not request exclusion may enter an appearance in the case. Rule 23 (c)(2).[16] Finally, the present Rule provides that in Rule 23 (b)(3) actions the judgment shall include all those found to be members of the class who have received notice and who have not requested ex-

[15] Subsection (b)(3) of Rule 23, allowing maintenance of a class action in situations generally analogous to those covered by the "spurious" class suit under former Rule 23, provides that an action may be. maintained as a class action "if the prerequisites of subdivision (a) are satisfied," and in addition:

"the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

[16] "In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel."

clusion. Rule 23(c)(3).[17] Thus, potential class members retain the option to participate in or withdraw from the class action only until a point in the litigation "as soon as practicable after the commencement" of the action when the suit is allowed to continue as a class action and they are sent notice of their inclusion within the confines of the class. Thereafter they are either nonparties to the suit and ineligible to participate in a recovery or to be bound by a judgment, or else they are full members who must abide by the final judgment, whether favorable or adverse.

Under former Rule 23, there existed some difference of opinion among the federal courts of appeals and district courts as to whether parties should be allowed to join or intervene as members of a "spurious" class after the termination of a limitation period, when the initial class action complaint had been filed before the applicable statute of limitations period had run. A majority of the courts ruling on the question, emphasizing the representative nature of a class suit, concluded that such intervention was proper.[18] Other courts concluded that since a "spurious" class action was essentially a device

---

[17] "The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class."

[18] *York* v. *Guaranty Trust Co.*, 143 F. 2d 503 (CA2 1944), rev'd on other grounds, 326 U. S. 99; *Escott* v. *Barchris Construction Corp.*, 340 F. 2d 731 (CA2 1965); *DePinto* v. *Provident Security Life Insurance Co.*, 323 F. 2d 826 (CA9 1963); *Union Carbide & Carbon Corp.* v. *Nisley*, 300 F. 2d 561 (CA10 1961).

to permit individual joinder or intervention, each individual so participating would have to satisfy the timeliness requirement.[19] This conflict in the implementation of the former Rule was never resolved by this Court.

Under present Rule 23, however, the difficulties and potential for unfairness which, in part, convinced some courts to require individualized satisfaction of the statute of limitations by each member of the class, have been eliminated, and there remain no conceptual or practical obstacles in the path of holding that the filing of a timely class action complaint commences the action for all members of the class as subsequently determined.[20] Whatever the merit in the conclusion that one seeking to join a class after the running of the statutory period asserts a "separate cause of action" which must individually meet the timeliness requirements, *Athas* v. *Day,* 161 F. Supp. 916, 919 (Colo. 1958), such a concept is simply inconsistent with Rule 23 as presently drafted. A federal class action is no longer "an invitation to joinder" but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions. Under the circumstances of this case, where the District Court found that the named plaintiffs asserted claims that were "typical of the claims or defenses of the class" and would "fairly and adequately protect the interests of the class," Rule 23 (a)(3), (4),

[19] *Pennsylvania Co. for Insurances* v. *Deckert,* 123 F. 2d 979 (CA3 1941); *Athas* v. *Day,* 161 F. Supp. 916 (Colo. 1958). The cases arising under former Rule 23 are discussed and analyzed in Simeone, Procedural Problems of Class Suits, 60 Mich. L. Rev. 905 (1962); Note, Class Actions Under New Rule 23 and Federal Statutes of Limitation: A Study of Conflicting Rationale, 13 Vill. L. Rev. 370 (1968).

[20] The courts that have dealt with this problem under present Rule 23 have reached this conclusion. *Esplin* v. *Hirschi,* 402 F. 2d 94 (CA10 1968); *Philadelphia Elec. Co.* v. *Anaconda Am. Brass Co.,* 43 F. R. D. 452 (ED Pa. 1968).

the claimed members of the class stood as parties to the suit until and unless they received notice thereof and chose not to continue. Thus, the commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs. To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23 (b)(3).

We think no different a standard should apply to those members of the class who did not rely upon the commencement of the class action (or who were even unaware that such a suit existed) and thus cannot claim that they refrained from bringing timely motions for individual intervention or joinder because of a belief that their interests would be represented in the class suit.[21] Rule

[21] In *York* v. *Guaranty Trust Co., supra*, the Court of Appeals for the Second Circuit permitted joinder in a "spurious" class suit on the reasoning that to rule otherwise would create a "trap for the unwary" who might refrain from instituting suit on the supposition that their interests were represented in the class suit. 143 F. 2d, at 529. As a member of that court subsequently observed, the contrary rule could be a "trap" only for those who were aware of and relied upon the commencement of the class suit. *Escott* v. *Barchris Construction Corp.*, 340 F. 2d, at 735 (Friendly, J., concurring). See also Comment, Spurious Class Actions Based upon Securities Frauds under the Revised Federal Rules of Civil Procedure, 35 Fordham L. Rev. 295, 308–309 (1966). In the present litigation, the District Court found that only seven of the more than 60 intervenors were

23 is not designed to afford class action representation only to those who are active participants in or even aware of the proceedings in the suit prior to the order that the suit shall or shall not proceed as a class action. During the pendency of the District Court's determination in this regard, which is to be made "as soon as practicable after the commencement of an action," potential class members are mere passive beneficiaries of the action brought in their behalf. Not until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case. It follows that even as to asserted class members who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceedings, the later running of the applicable statute of limitations does not bar participation in the class action and in its ultimate judgment.

## II

In the present case the District Court ordered that the suit could *not* continue as a class action, and the participation denied to the respondents because of the running of the limitation period was not membership in the class, but rather the privilege of intervening in an individual suit pursuant to Rule 24 (b)(2).[22] We hold that in this posture, at least where class action status has been denied

aware of and relied on the attempted class suit. 50 F. R. D., at 101 and n. 1.

[22] The petition for certiorari did not, of course, present the question of whether intervention as of right under Rule 24 (a)(2) was properly denied by the District Court, and we do not reach that question. Our conclusion as to the effect of the commencement of a class suit on tolling the statute of limitations as to those who subsequently move to intervene by permission under Rule 24 (b)(2) would apply *a fortiori* to intervenors as of right under Rule 24 (a)(2).

solely because of failure to demonstrate that "the class is so numerous that joinder of all members is impracticable," the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status. As the Court of Appeals was careful to note in the present case, "[m]aintenance of the class action was denied not for failure of the complaint to state a claim on behalf of the members of the class (the court recognized the probability of common issues of law and fact respecting the underlying conspiracy) [,] not for lack of standing of the representative, or for reasons of bad faith or frivolity." 473 F. 2d, at 584. (Footnote omitted.)

A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable. In cases such as this one, where the determination to disallow the class action was made upon considerations that may vary with such subtle factors as experience with prior similar litigation or the current status of a court's docket,[23] a rule requiring successful

---

[23] As indicated, *supra,* at 543, Judge Pence based his conclusion that the number of potential members was not so large as to make joinder impracticable on inferences from his prior experience with similar antitrust litigation against the same defendants. Not only would a district court's estimate of the expected attrition among the class of plaintiffs be difficult for any individual plaintiff to predict, but other federal courts have indicated that subsequent attrition will not be considered as a factor affecting numerosity under Rule 23 (a) (1) when considered at the outset of the case. See, *e. g., Iowa* v. *Union Asphalt & Roadoils, Inc.,* 281 F. Supp. 391, 401 (SD Iowa

anticipation of the determination of the viability of the class would breed needless duplication of motions. We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.[24]

This rule is in no way inconsistent with the functional operation of a statute of limitations. As the Court stated in *Order of Railroad Telegraphers* v. *Railway Express Agency*, 321 U. S. 342, statutory limitation periods are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.*, at 348–349. The policies of ensuring essential fairness to defendants and of barring a plaintiff who "has slept on his rights," *Burnett* v. *New York Central R. Co.*, 380 U. S. 424, 428, are satisfied when, as here, a named plaintiff who is found

---

1968); 3B J. Moore, Federal Practice ¶ 23.05, p. 23–279 (2d ed.). Indeed, one commentator has observed that "[t]he federal decisions under original Rule 23 (a) reflect . . . contrariety of opinion as to the meaning of 'numerous.' " *Id.*, at 23–272.

[24] The Advisory Committee's Note on Proposed Rule 23 observes on the issue resolved here only that the question "whether the intervenors in the nonclass action shall be permitted to claim . . . the benefit of the date of the commencement of the action for purposes of the statute of limitations [is] to be decided by reference to the laws governing . . . limitations as they apply in particular contexts." 28 U. S. C. App., p. 7767.

to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.[25]

Since the imposition of a time bar would not in this circumstance promote the purposes of the statute of limitations, the tolling rule we establish here is consistent both with the procedures of Rule 23 and with the proper function of the limitations statute. While criticisms of Rule 23 and its impact on the federal courts have been both numerous and trenchant, see, *e. g.,* American College of Trial Lawyers, Report and Recommendations of the Special Committee on Rule 23 of the Federal Rules of Civil Procedure (1972); H. Friendly, Federal Jurisdiction: A General View 118–120 (1973); Handler, The Shift from Substantive to Procedural Innovations in Antitrust Suits—The Twenty-Third Annual Antitrust Review, 71 Col. L. Rev. 1, 5–12 (1971); Handler, Twenty-Fourth Annual Antitrust Review, 72 Col. L. Rev. 1, 34–42 (1972), this interpretation of the Rule

---

[25] As Judge Friendly has noted, in certain situations the intervenors may raise issues not presented in the class action complaint and to that extent the defendants will not have received notice of the nature of the claims against them. *Escott* v. *Barchris Construction Corp.,* 340 F. 2d, at 735 (concurring opinion). This problem, however, will be minimized when, as here, the District Court has already found that the named plaintiffs' claims typify those of the class. Furthermore, under Rule 23 (d)(3) "the court may make appropriate orders . . . imposing conditions on . . . intervenors."

is nonetheless necessary to insure effectuation of the purposes of litigative efficiency and economy that the Rule in its present form was designed to serve.

## III

The petitioners contend, however, that irrespective of the policies inherent in Rule 23 and in statutes of limitations, the federal courts are powerless to extend the limitation period beyond the period set by Congress because that period is a "substantive" element of the right conferred on antitrust plaintiffs and cannot be extended or restricted by judicial decision or by court rule.[26] Unlike the situation where Congress has been silent as to the period within which federal rights must be asserted,[27] in the antitrust field Congress has specified a precise limitation period, and further has provided for a tolling period in the event that Government litigation is instituted. The inclusion of the limitation and the tolling period, the petitioners assert, makes the "substantive" statute immune from extension by "procedural" rules. They rely in large part on the Court's decision in *The Harris-*

---

[26] The Enabling Act empowering the Supreme Court to promulgate rules of procedure commands that "[s]uch rules shall not abridge, enlarge or modify any substantive right . . . ." 28 U. S. C. § 2072.

[27] In such situations the federal courts have generally looked to local law as the source of a federal limitation period. "Apart from penal enactments, Congress has usually left the limitation of time for commencing actions under national legislation to judicial implications. As to actions at law, the silence of Congress has been interpreted to mean that it is federal policy to adopt the local law of limitation. [Citations omitted.] The implied absorption of State statutes of limitation within the interstices of the federal enactments is a phase of fashioning remedial details where Congress has not spoken but left matters for judicial determination within the general framework of familiar legal principles." *Holmberg* v. *Armbrecht,* 327 U. S. 392, 395. See *Auto Workers* v. *Hoosier Corp.,* 383 U S. 696. But see *McAllister* v. *Magnolia Petroleum Co.,* 357 U. S. 221.

*burg,* 119 U. S. 199, in which it was stated, with respect to state wrongful-death statutes,

> "The statutes create a new legal liability, with the right to a suit for its enforcement, provided the suit is brought within twelve months, and not otherwise. The time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is a condition attached to the right to sue at all." *Id.,* at 214.

In *The Harrisburg,* however, the Court dealt with a situation where a plaintiff who was invoking the maritime jurisdiction of a federal court sought relief under a state statute providing for substantive liability.[28] The Court held that when a litigant in a federal court asserted a cause of action based upon a state statute he was bound by the limitation period contained within that statute rather than by a federal time limit. Cf. *Guaranty Trust Co.* v. *York,* 326 U. S. 99. But the Court in *The Harrisburg* did not purport to define or restrict federal judicial power to delineate circumstances where the applicable statute of limitations would be tolled. As we said in *Burnett, supra,* "[w]hile the embodiment of a limitation provision in the statute creating the right which it modifies might conceivably indicate a legislative intent that the right and limitation be applied together when the right is sued upon in a foreign forum, the fact that the right and limitation are written into the same statute does not indicate a legislative intent as to whether or when the statute of limitations should be tolled." 380 U. S., at 427 n. 2. The proper test is not whether a time

---

[28] The plaintiff in *The Harrisburg* initially claimed that federal maritime law afforded him a substantive cause of action for wrongful death. The Court held in that case that the federal maritime law did not extend to such suits. This holding was overruled in *Moragne* v. *States Marine Lines, Inc.,* 398 U. S. 375.

limitation is "substantive" or "procedural," but whether tolling the limitation in a given context is consonant with the legislative scheme.[29]

In recognizing judicial power to toll statutes of limitation in federal courts we are not breaking new ground. In *Burnett* v. *New York Central R. Co.,* 380 U. S. 424, a railroad employee claiming rights under the Federal Employers' Liability Act, 45 U. S. C. § 51 *et seq.,* initially brought suit in a state court within the three-year time limitation specifically imposed by § 6 of the Act, 45 U. S. C. § 56. The state proceeding was subsequently dismissed because of improper venue. Immediately after the dismissal, but also after the running of the limitation period, the employee attempted to bring suit in federal court. Reversing determinations of the District Court and the Court of Appeals that the federal suit was time barred, the Court held that the commencement of the state suit fulfilled the policies of repose and certainty inherent in the limitation provisions and tolled the running of the period. See also *Herb* v. *Pitcairn,* 325 U. S. 77.

---

[29] Our conclusion that a judicial tolling of the statute of limitations does not abridge or modify a substantive right afforded by the antitrust acts is consistent with what scant legislative history there is on the limitation and tolling provisions. Sections 4B and 5 (b) of the Clayton Act were added to the antitrust laws in 1955, long after the original substantive liabilities were established. During debate a member of the House Judiciary Committee reporting the bill was asked, "[A]m I correct in assuming that this limitation provided by this amendment is strictly a procedural limitation and has nothing to do with substance?" to which he replied: "It was the specific purpose of the committee in reporting this bill to in no way affect the substantive rights of individual litigants. It is simply a procedural change and suggested with the thought of setting up a uniform statute of limitations. That is the sole purpose." 101 Cong. Rec. 5131 (1955) (remarks of Reps. Murray and Quigley).

Similarly, in cases where the plaintiff has refrained from commencing suit during the period of limitation because of inducement by the defendant, *Glus* v. *Brooklyn Eastern Terminal,* 359 U. S. 231, or because of fraudulent concealment, *Holmberg* v. *Armbrecht,* 327 U. S. 392, this Court has not hesitated to find the statutory period tolled or suspended by the conduct of the defendant. In *Glus, supra,* the Court specifically rejected a contention by the defendant that when "the time limitation is an integral part of a new cause of action . . . that cause is irretrievably lost at the end of the statutory period." 359 U. S., at 232. To the contrary, the Court found that the strict command of the limitation period provided in the federal statute was to be suspended by considerations "[d]eeply rooted in our jurisprudence." *Ibid.*

These cases fully support the conclusion that the mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose.

## IV

Finally, the petitioners urge that the Court of Appeals' reversal of the District Court for failure to permit intervention under Rule 24 (b)(2) was nonetheless improper because the District Court in denying such permission was doing no more than exercising a legal discretion which the Court of Appeals did not find to be abused.[30] They point out that Rule 24 (b) explicitly refers to a district judge's permission to intervene as an exercise of

---

[30] The dissenting judge in the Court of Appeals based his conclusion on this ground. 473 F. 2d, at 584.

discretion,[31] and that this Court has held that "[t]he exercise of discretion in a matter of this sort is not reviewable by an appellate court unless clear abuse is shown . . . ." *Allen Calculators, Inc.* v. *National Cash Register Co.,* 322 U. S. 137, 142; see also *Brotherhood of Railroad Trainmen* v. *Baltimore & O. R. Co.,* 331 U. S. 519, 524.

In denying permission to intervene in this case, however, Judge Pence did not purport to weigh the competing considerations in favor of and against intervention, but simply found that the prospective intervenors were absolutely barred by the statute of limitations. This determination was not an exercise of discretion, but rather a conclusion of law which the Court of Appeals correctly found to be erroneous. The judgment of the Court of Appeals reversing the District Court's order directed that the case be remanded "for further proceedings upon the motions [to intervene]." 473 F. 2d, at 584. Rather than reviewing an exercise of discretion, the Court of Appeals merely directed that discretion be exercised.[32]

## V

It remains to determine the precise effect the commencement of the class action had on the relevant

[31] Rule 24 (b) concludes, *"In exercising its discretion* [as to whether to permit intervention] the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." (Emphasis added.)

[32] Furthermore, there is persuasive intrinsic evidence that Judge Pence ruled against the respondents only on the issue of the applicability of the statute of limitations. First, his original conclusion that joinder was a more practicable remedy, 49 F. R. D., at 20, would be incongruous if immediately thereafter he asserted that intervention was, in fact, impracticable. Second, as noted previously, n. 10, *supra,* the District Court did not deny leave to intervene as to those who confined the allegations of their complaints to events occurring less than four years prior to the motions to intervene.

limitation period. Section 5 (b) of the Clayton Act provides that the running of the statutes of limitations be "suspended" by the institution of a Government antitrust suit based on the same subject matter. The same concept leads to the conclusion that the commencement of the class action in this case suspended the running of the limitation period only during the pendency of the motion to strip the suit of its class action character. The class suit brought by Utah was filed with 11 days yet to run in the period as tolled by § 5 (b), and the intervenors thus had 11 days after the entry of the order denying them participation in the suit as class members in which to move for permission to intervene. Since their motions were filed only eight days after the entry of Judge Pence's order, it follows that the motions were timely.

The judgment of the Court of Appeals for the Ninth Circuit is therefore

*Affirmed.*

Mr. Justice Blackmun, concurring.

I join the Court's opinion and concur in its judgment. Our decision, however, must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights. Nor does it necessarily guarantee intervention for all members of the purported class.

As the Court has indicated, the purpose of statutes of limitations is to prevent surprises "through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of Railroad Telegraphers* v. *Railway Express Agency,* 321 U. S. 342, 348–349 (1944). Under our decision today, intervenors as of

right will be permitted to press their claims subject only to the requirement that they have an interest relating to the property or transaction and be impaired or impeded in their ability to protect that interest. Fed. Rule Civ. Proc. 24 (a). Such claims, therefore, invariably will concern the same evidence, memories, and witnesses as the subject matter of the original class suit, and the defendant will not be prejudiced by later intervention, should class relief be denied. Permissive intervenors may be barred, however, if the district judge, in his discretion, concludes that the intervention will "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. Rule Civ. Proc. 24 (b). The proper exercise of this discretion will prevent the type of abuse mentioned above and might preserve a defendant whole against prejudice arising from claims for which he has received no prior notice.

The provision in Fed. Rule Civ. Proc. 23 (c)(1), that an order allowing the maintenance of a suit as a class action "may be conditional, and may be altered or amended before the decision on the merits," could be viewed to generate uncertainty under the Court's decision, for the class aspect might be disbanded after the litigation has long been underway. Rule 23 (c)(1), of course, provides that the court shall decide whether a class action may be maintained "[a]s soon as practicable after the commencement of an action." This decision, therefore, will normally be made expeditiously. And any later alteration with respect to intervention is subject to the discretionary elements of Rule 24 (b), mentioned above, and to Rule 23 (d)(3)'s provision that "the court may make appropriate orders . . . imposing conditions . . . on intervenors."