**Richard J. STULL, Plaintiff,**

v.

**Nicholas H. BAYARD et al., Defendants.**

**No. 75 Civ. 3782.**

United States District Court,
S. D. New York.

Jan. 7, 1977.

Demov, Morris, Levin & Shein, New York City, for plaintiff; Irving Bizar, New York City, of counsel.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendants Howard Piper, Thomas F. Piper and William T. Piper, Jr.; Paul G. Pennoyer, Jr., Marcia E. Carpeni, New York City, of counsel.

Webster & Sheffield, New York City, for defendant Bangor Punta Corp.; Roger L. Waldman, Allan J. Graf, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant The First Boston Corp.; John L. Warden, Charles W. Sullivan, Philip K. Howard, New York City, of counsel.

WYATT, District Judge.

This is a motion by plaintiff for an order (a) determining that this action may be maintained as a class action (Fed.R.Civ.P. 23(c)(1)) and (b) granting partial summary judgment in favor of plaintiff (Fed.R.Civ.P. 56), determining that defendants are liable to plaintiff.

There are three cross-motions: (a) by defendants Howard Piper, Thomas F. Piper, and William T. Piper, Jr.; (b) by defendant Bangor Punta Corporation ("Bangor"); and (c) by defendant The First Boston Corporation ("First Boston"). The cross-motions are for summary judgment in favor of the moving defendants, based on a number of grounds. Because I find that the action is barred by the statute of limitations, the other grounds asserted by movants are not reached.

### 1

This action (denominated in the complaint as a "class-action") was commenced on August 1, 1975, and is one of many actions arising out of the battle in 1969 between Bangor and Chris-Craft Industries, Inc. ("Chris-Craft") for control of Piper Aircraft Corporation ("Piper"). As part of their competing efforts to obtain a controlling interest in Piper, Bangor and Chris-Craft each made tender or exchange offers to stockholders of Piper. The history of the controversy may be found in the opinion of our Court of Appeals in *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341 (2 Cir. 1973).

Plaintiff is Richard Stull, a New York lawyer who has been active in class and derivative actions. He is, and at all relevant times has been, married to Lillian Stull. In 1969 Lillian owned 150 shares and Richard owned 75 shares of Piper. There were 1,644,890 Piper shares outstanding.

Richard had advised Lillian to buy her Piper shares (plaintiff deposition 168–9). Neither Richard nor Lillian accepted any tender offer of either Chris-Craft or Bangor for their Piper shares.

### 2

Chris-Craft began buying Piper shares in 1968 in the open market. On January 23, 1969, Chris-Craft made a public tender offer for 300,000 Piper shares at $65 in cash per share.

On February 3, 1969, Lillian, represented by Richard as her attorney, commenced an action in this Court (69 Civ. 440; sometimes referred to hereafter as the "first Lillian action"). There were a number of claims against various defendants, the principal ones being asserted derivatively for the benefit of Piper. The defendants included the three members of the Piper family who are defendants in the case at bar. The gist of the complaint was that defendants had wrongfully adopted a plan to prevent Chris-Craft from securing control of Piper. Yet Lillian averred that the true value of the Piper shares was in excess of $100 per share (and if so the defendants conferred a benefit on Lillian and other stockholders).

On May 12, 1972, Lillian, again represented by Richard as her attorney, commenced another action in this Court (72 Civ. 2055; sometimes referred to hereafter as "the second Lillian action"). In the second Lillian action, she sought to represent Piper stockholders as a class and to hold defendants liable because by false and misleading statements they induced the class not to consider the $65 per share tender offer of Chris-Craft, which offer was a "fair price" for the Piper shares. (The inconsistency of the claims in the two actions is glaring.)

First Boston was not named as a defendant in either of the two Lillian actions.

There was much activity for several years in the two Lillian actions, with Richard acting as attorney for Lillian. By order filed December 28, 1973, Judge Carter consolidated the two Lillian actions.

Then on April 30, 1974, Judge Owen in the second Lillian action filed an order with opinion (reported at 63 F.R.D. 702) denying a motion by Lillian that the second Lillian action be maintained as a class action. Judge Owen's reason was that Lillian was not an appropriate representative of the class because (a) her husband Richard was her attorney and there was a "potential conflict of interest" which was "obvious" and (b) her sworn statements in her two actions were so "contradictory" that they made her "vulnerable to embarrassing cross-examination".

At some point after Judge Owen's decision, Richard seems to have ceased to appear in any papers or proceedings as attorney for Lillian and the firm of Milberg & Weiss appeared as her attorneys. As part of a notice of motion for reargument before Judge Owen, a consent to substitute Milberg & Weiss as attorneys in the two Lillian actions was filed on May 9, 1974. Richard and his law partner arranged for this substitution (plaintiff deposition 80); apparently Lillian had nothing to do with the selection or retainer of Milberg & Weiss.

On March 14, 1975, the two Lillian actions were, as part of a special program in this Court, transferred to me for all purposes.

After a hearing before me on April 25, 1975, of many motions, an order was filed on May 28, 1975. Among other things, this order "deconsolidated and severed" the two Lillian actions and directed "that they be tried separately". The order also recognized a change in the management of Piper, realigned Piper as a party plaintiff in the first Lillian action, permitted it to file an amended complaint in that action against members of the Piper family, and severed the claims of Lillian in that action "from the claims to be asserted" by Piper.

Thereafter, the parties began discussion of settlement of the two Lillian actions.

### 3

The action at bar was commenced by Richard as a class action on August 1, 1975. The claim made here by Richard is substantially the same claim in more or less the

same words as that made in the second Lillian action. First Boston was made a defendant in Richard's action; it was not a defendant in the two Lillian actions.

We are told (Memo for Piper family, 8) that before the Richard action was commenced an agreement in principle had been reached settling the two Lillian actions. This does not seem to be disputed.

What legitimate reason there could have been for Richard to commence a third action is difficult to discover. His own testimony on the subject by deposition was evasive and hard to believe. He testified that he knew of no settlement (SM 84), that he was not informed of the substance of settlement negotiations (SM 86), that he had nothing to do with it (SM 86), that after he was substituted he had nothing to do with Lillian's actions (SM 86–7), that he did not know the status of her actions (SM 86), and that he asked Lillian "to exclude me from any discussions" (SM 86). In an affidavit submitted on these motions, Richard states: "The case was settled over my objections." (Presumably this refers to both the Lillian actions.)

Richard would have us believe that his wife, on whose behalf he had brought the two actions, for whom he had acted as attorney in the two actions for several years, who had bought the Piper shares on his advice, and with whom he was living in peace and harmony, settled the two actions over his "objections" on the advice of lawyers hand picked by Richard and retained for her by him. I cannot stretch credulity so far.

If Richard really objected to a settlement by Lillian, she and her lawyers (hand picked by Richard) could readily have been persuaded to refuse the settlement. If, for some bizarre reason not now to be seen, persuasion did not succeed, Richard could have asked to intervene in the two Lillian actions. Moreover, in the derivative action (the first Lillian action) the settlement required the approval of the Court. Richard could have asked the Court to disapprove the settlement. Any of these courses would have avoided the statute of limitations

problem, which at that late date was certainly an obvious one. But Richard followed none of the logical courses. Instead, he commenced this third action. His reasoning must have been that he and Lillian would enjoy the benefits of the settlement of her actions, while preserving the chance of future benefits through prosecution of his third action.

4

Despite the commencement of the Richard action, defendants went ahead to complete settlement of the two Lillian actions. This seems understandable from their point of view since it would be an advantage to them to eliminate the two Lillian actions against which the statute of limitations could not be urged, even though a third action remained but one against which the statute of limitations would be available.

The first Lillian action, being a derivative action, required Court approval of a settlement. Fed.R.Civ.P. 23.1. A stipulation of settlement was filed which referred to the fact that Piper itself had commenced, in the Court of Common Pleas for Clinton County, Pennsylvania, an action against the Piper family members. Settlement of the first Lillian action was agreed not to affect the rights of Piper in its Pennsylvania action. Neither Lillian nor Piper were to obtain anything from any defendant but Bangor agreed to pay $1249.99 for costs and disbursements incurred by Richard's law firm and Milberg & Weiss in the action. An order was filed on February 11, 1976, directing that notice of the settlement be given by mail to all Piper stockholders and of a hearing on the settlement to be held on March 26, 1976. Such hearing was held. No stockholder—notably including Richard —opposed. The settlement was approved and the action dismissed by order filed March 26, 1976.

Since Judge Owen had denied class action status to the second Lillian action, no Court approval for the settlement of this action was required. What benefits Lillian received by way of settlement are not shown and are not required to be shown. A stipu-

lation of dismissal of the second Lillian action was submitted, "So ordered", and filed on March 16, 1976.

## 5

This brings us finally to the application of the statute of limitations to the third action, that by Richard.

It is averred in the complaint that the defendants made untrue statements of material facts and omitted to state other material facts which were necessary to make their statements not misleading, and that they engaged in fraudulent, deceptive, and manipulative acts and practices in violation of Section 14 of the Securities Exchange Act of 1934 (15 U.S.C. § 78n; "the 1934 Act"). The various misleading statements and omissions occurred in several letters directed to Piper stockholders from members of the Piper family in January and June of 1969, a press release on May 8, 1969, and the registration statement of Bangor on July 18, 1969.

There is also an averment that the public announcement by the defendants in May of 1969 of Bangor's exchange offer was "illegally made and disseminated" (apparently claimed to be in violation of Section 14(d)(1) of the 1934 Act; 15 U.S.C. § 78n(d)(1) ), because the announcement was made at a time when no registration statement concerning the offer had been filed with the Securities and Exchange Commission. Since plaintiff seeks relief only for damages suffered because of his failure to accept the Chris-Craft offer, and makes no claim that he bought, sold, or even considered accepting Bangor's exchange offer, this averment can only be construed as charging another misleading omission under Section 14(e) of the 1934 Act.

Finally, it is averred that the defendants "wrongfully and unlawfully negotiated and acquired" for Bangor during the pendency of Bangor's exchange offer, blocks of Piper shares at private sale. How this activity violated Sections 14(d)(1) or 14(e) of the 1934 Act is not understood, but it appears that in any event all such acquisitions by Bangor occurred between May 14 and May

23, 1969. *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 480 F.2d at 377.

It is thus clear that all of the allegedly unlawful acts of the defendants were averred as having been committed between January 26, 1969 and July 18, 1969.

## 6

■ The principle is established that when a federally created right of action has no accompanying statute of limitations, the local law of limitations is applicable. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210, n.29, 96 S.Ct. 1375, 1389, 47 L.Ed.2d 668 (1976); *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir. 1970)

■ The relevant New York statutes are CPLR §§ 213(9) and 203(f). When read together, these statutes provide that, in actions based on fraud, suit must be commenced either within six years of the time the fraud is committed, or within two years of the time the fraud is, or should have been, discovered by the plaintiff, whichever period is longer. *Rutland House Associates v. Danoff,* 37 A.D.2d 828, 325 N.Y.S.2d 273 (1st Dept., 1971)

## 7

It is clear that in the present case, the last fraudulent act of which plaintiff complains occurred on July 18, 1969. This action was not filed until August 1, 1975, more than six years later. The plaintiff, by his own admission, discovered the alleged violations of Section 14 of the 1934 Act by defendants no later than December 10, 1971, the date of Judge Pollack's decision in *Chris-Craft Industries, Inc. v. Piper Aircraft,* 337 F.Supp. 1128 (S.D.N.Y.). See disposition of plaintiff pp. 61–66. Clearly, the action was commenced more than two years after discovery by plaintiff of the fraud.

## 8

■ To avoid the conclusion just reached, plaintiff argues that commencement as a class action of the second Lillian action tolled the running of the statute of limitations, at least during the period before

Judge Owen ordered that the second Lillian action could not be maintained as a class action. This argument is based on the opinion in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

In *American Pipe*, the District Court denied leave to intervene under Fed.R.Civ.P. 24(b)(2) to members of a purported class after class action status had been denied to the action and after the relevant limitations period had run on the claims of the applicants to intervene; the District Court held that the statute of limitations had not been tolled by commencement of the class action on their behalf. 50 F.R.D. 99. The Court of Appeals reversed, finding that the statute had been tolled as to the applicants to intervene; it did not direct the District Court to grant their motion to intervene but remanded for an exercise of discretion under Fed.R.Civ.P. 24(b) as to their motion to intervene. 473 F.2d 580 (9 Cir. 1973). The Supreme Court then affirmed, saying (among other things):

"We hold that in this posture, at least where class action has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute *for all purported members of the class who make timely motions to intervene* after the court has found the suit inappropriate for class action status." (414 U.S. at 553, 94 S.Ct. at 766; emphasis supplied)

The Supreme Court went out of its way to specify that the limitations statute was tolled by a class action only as to those "purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status".

Richard is not within the *American Pipe* principle of tolling. He did not move (timely or not) to intervene in the then pending second Lillian action after class action status had been denied to that action. Richard went counter to and defied the *American Pipe* principle by commencing a separate and independent action, thus increasing the volume of federal litigation and defeating the economy and efficiency which it was the object of the present class action Rule 23 to bring about.

■ There is no square authority on the point, but in my view a member of a class, on whose behalf a class action has been commenced, may not bring a separate, independent action after his individual claim has been time barred. His sole remedy, under *American Pipe,* is a timely motion to intervene in the class action after class action status has been denied; only if he does so, is the statute of limitations tolled as to him.

The discussion in *American Pipe* centered on the nature and objectives of class actions. The opinion began: "This case involves an aspect of the relationship between a statute of limitations and the provisions of Fed.Rule Civ.Proc. 23 regulating class actions in the federal courts." The opinion relied on rulings under Fed.R.Civ.P. 23 as it stood before the 1966 amendments that intervention by a class member was proper even though his claim was time barred (*Escott v. Barchris Construction Corp.,* 340 F.2d 731 (2d Cir. 1965) was one of these.) The opinion stated: "Thus, the commencement of the [class] action satisfied the purpose of the limitation provision *as to all those who might subsequently participate in the [class] suit* as well as for the named plaintiffs" (414 U.S. at 551, 94 S.Ct. at 765; emphasis supplied). The opinion states: " . . . the later running of the applicable statute of limitations does not bar *participation in the class action* and in its ultimate judgment" (414 U.S. at 552, 94 S.Ct. at 765; emphasis supplied). There is nowhere in the opinion any suggestion that a separate independent action by a class member could be maintained. The opinion emphasized that its interpretation of the class action Rule 23 was "necessary to insure effectuation of the purposes of litigative efficiency and economy that the Rule in its present form was designed to serve" (414 U.S. at 556, 94 S.Ct. at 767). It certainly would not effectuate "litigative effi-

ciency and economy" to permit any number of separate, independent actions by class members on time-barred claims. The separate opinion of Mr. Justice Blackmun points out that the *American Pipe* principle will not unduly encourage the assertion of stale claims because these can only be asserted through intervention either as of right or as an exercise of the Court's discretion and that the *American Pipe* decision does not "necessarily guarantee intervention for *all* members of the purported class" (414 U.S. at 561, 94 S.Ct. at 770; emphasis supplied).

The conclusion in the Moore treatise from a study of *American Pipe* is this: "On balance, then, it seems likely that the class member may not file an independent suit after the claim is time-barred". 3B Moore's Federal Practice 1975 Supplement p. 155.

There is a puzzling footnote 13 in the opinion of Mr. Justice Powell in *Eisen v. Carlisle,* 417 U.S. 156, at 176, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). This might suggest a broader reading of the effect of *American Pipe* than mine.

I have examined the cases cited for Richard. They do not affect my conclusion and not all of them need be mentioned. *Hellerstein v. Mather,* 360 F.Supp. 473 (D.Col. 1973) without discussion reaches a conclusion contrary to mine but this was before the Supreme Court decided *American Pipe. Miller v. Central Chinchilla Group, Inc.,* 66 F.R.D. 411 (S.D.Iowa 1975) seems to read *American Pipe* as I do because in denying class action status the Court ordered notice thereof *to all members of the class* with further notice that they had 30 days within which to move to intervene.

The several cross-motions by defendants are granted. The motion by plaintiff is denied as moot.

Settle Order.