**EFiled: Oct 03 2014 01:09PM EDT**
**Transaction ID 56128525**
**Case No. 9154-VCN**

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

October 3, 2014

Blake A. Bennett, Esquire
Cooch and Taylor, P.A.
1000 West Street, 10th Floor
Wilmington, DE 19801

Gregory V. Varallo, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Re:   *Wolst v. Monster Beverage Corporation*
      C.A. No. 9154-VCN
      Date Submitted: June 13, 2014

Dear Counsel:

Plaintiff Anastasia Wolst ("Wolst") has owned common stock of Defendant

Monster Beverage Corporation ("Monster") continuously since 1999. During 2006

and 2007, with the benefit of nonpublic information about Monster's finances and

business prospects, certain insiders allegedly sold Monster common stock. That

conduct resulted in federal securities class litigation filed in September 2008.[1] The

_____

[1] Am. Pre-Trial Stip. & Order ("Pretrial Stip.") ¶ 6. Wolst, because of the lack of any trading activities during the pertinent timeframe, was not a member of the class. *See* Pretrial Stip. ¶ 5.

parties to the federal securities class action entered into a settlement agreement in April 2014.[2]

In October 2008, other shareholders brought a derivative action regarding the trading activities. Wolst eventually joined in that effort. Because of an inability to establish demand futility, the derivative action failed.

Disappointed with that outcome, Wolst, in February 2012, made a demand on Monster's board of directors to bring litigation related to the alleged insider trading of 2006 and 2007. In response to her demand, Monster's board appointed a Special Committee. As a result of the Special Committee's investigation, her demand for litigation was rejected. The Special Committee did not provide a written report, and Wolst did not abandon her concerns about those trading activities.

In March 2013, Wolst sent a letter to Monster seeking to inspect certain of its books and records in accordance with 8 *Del. C.* § 220.[3] She identified her purposes for inspection as: (1) "[e]valuating the Board's refusal to act on [her]

---

[2] Monster's insurers committed to pay the $16,250,000 settlement. JX 52; Pretrial Stip. ¶ 14.

[3] JX 44; Pretrial Stip. ¶ 56.

litigation demand and whether that refusal constituted a reasonable and good-faith exercise of the Board's business judgment" and (2) "[e]valuating the process by which the Board decided to refuse to act on [her] litigation demand."[4] Wolst concedes that her ultimate goal in pursuing her books and records request is "to determine whether there is a basis to bring a derivative suit" based on the "wrongs alleged in" the earlier derivative action.[5] Thus, the "end game" here for Wolst is the filing of another derivative action. Wolst has not offered any other purpose, and no other purpose is apparent.

This matter was tried on a paper record, and this letter opinion sets forth the Court's findings of fact (essentially uncontested) and its conclusions of law (vigorously debated).

A stockholder invoking her rights under Section 220 must demonstrate a "proper purpose" for the inspection. A proper purpose is one "reasonably related to [the stockholder's] interest as a stockholder."[6] Monster argues that Wolst does not have a proper purpose because the derivative claims that she wants to bring

---

[4] JX 44; Pretrial Stip. ¶ 58.
[5] JX 59 at 109, 119; Pretrial Stip. ¶ 58.
[6] 8 *Del. C.* § 220(b).

would be time-barred.[7]  Wolst seeks to assess whether the Special Committee's investigation was wrongful or improper in order to develop a basis for avoiding the consequences of Monster's rejection of her demand that litigation be brought to remedy the trading activities.  Her purpose is to advance her derivative claims, which would be a proper purpose unless the time-bar defense defeats it.

A potentially viable affirmative defense to an anticipated derivative claim will not necessarily defeat a books and records effort.[8]  Sometimes developing the record to withstand possible affirmative defenses requires more effort than is practicable for a books and records action.  Sometimes conduct that cannot be challenged because of a time-bar defense can, nevertheless, inform consideration of other potentially wrongful conduct that is not yet time-barred.  There is, however, "the possibility that, in a specific factual setting, a time bar defense . . . would eviscerate any showing that might otherwise be made in an effort to establish a proper shareholder purpose."[9]  The challenged trading activities

---

[7] Monster does not dispute that her purpose would be proper if the eventual derivative claims could be filed timely.

[8] *See, e.g.*, *Amalgamated Bank v. UICI*, 2005 WL 1377432, at *2 (Del. Ch. June 2, 2005).

[9] *Id.* at *2 n.14.

occurred in 2006 and 2007. Wolst does not identify any more recent potentially wrongful conduct that could provide a basis for a derivative action. Without some elaboration upon what she would do with the requested books and records in her capacity as a stockholder, the burden of producing books and records that Section 220 imposes upon the corporation should be avoided in this instance. In sum, consideration of a time-bar defense to the contemplated derivative action is appropriate in this "specific factual setting."[10]

The last of the events serving as the basis for Wolst's anticipated derivative action occurred almost seven years ago, well beyond the presumptive three-year limit of 10 *Del. C.* § 8106, the analogous statute of limitations. Although equity is not strictly bound to a statute of limitations in this context, the three-year period is a start in the Court's laches analysis. Wolst argues that Monster has failed to satisfy the laches requirements of both unreasonable delay and prejudice.[11] However, delay of seven years is unreasonable, especially since Wolst had constructive knowledge of the events by late 2007 and participated in a related

---

[10] *See Graulich v. Dell Inc.*, 2011 WL 1843813, at *6 (Del. Ch. May 16, 2011).
[11] *See, e.g.*, *Roseton OL, LLC v. Dynegy Hldgs., Inc.*, 2011 WL 3275965, at *7 (Del. Ch. July 29, 2011).

derivative action.  Although Monster has not itemized how it would be prejudiced, delay for which Wolst is responsible is presumptively prejudicial under the circumstances because of fading memories and the protracted distractions diverting management's attention from the needs of the corporation.  The passage of seven years from events which were the subject of other timely litigation would unjustifiably prejudice Monster.[12]

Thus, Wolst's derivative claims would be time-barred unless the pendency of the federal securities class action is a basis for tolling the statute of limitations and the period for evaluating the laches defense.  Wolst relies upon the principle that the filing of a class action generally tolls the running of the statute of limitations for all potential class members.[13]  In the class action structure, the putative class representatives who file the action do so not only for themselves, but also for all similarly situated persons.  Those similarly situated persons are entitled to rely upon the actions of their putative representatives.  Otherwise, potential class

---

[12] Even if it is assumed that the period during which Wolst has attempted to exercise her rights under Section 220 may be excluded from the Court's time-bar arithmetic, the relevant period still exceeds five years, more than enough time for her to have exercised any right to bring a derivative action.

[13] *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974); *Dubroff v. Wren Hldgs., LLC*, 2011 WL 5137175 (Del. Ch. Oct. 28, 2011).

members would be under pressure to file their own actions in order to avoid having their individual claims time-barred in the event that the initial class representatives decide to abandon their efforts. It does not appear that the class action concept of tolling has been extended to derivative actions.[14] It is true, as Wolst points out, that derivative actions purportedly brought to recover a corporation's losses from violations of federal securities laws and the resulting litigation are frequently stayed pending resolution of the foundational securities litigation. Until the outcome of the securities litigation is known, the scope of the harm suffered by the corporation is uncertain. Yet just because prudent case management may support a stay of a derivative action in a similar context, it does not follow that the statute of limitations ceases to run for every interested party. More specifically, the class action tolling doctrine has only been applied for the benefit of potential class members. Wolst was not a member of the class in the federal securities litigation and thus is not entitled to the benefits accruing to the class. In short, the Court declines to extend the rationale of *American Pipe*, which protects stockholders'

---

[14] *Cf. Krinsk v. Fund Asset Mgmt., Inc.*, 1986 WL 205, at *3 (S.D.N.Y. May 9, 1986).

direct claims, to derivative claims that stockholders might assert on behalf of the corporation.

In summary, Wolst "has articulated no stated purpose other than to investigate wrongdoing in order to bring [her derivative] suit against [Monster's insiders who traded on nonpublic information], and [Wolst] is time-barred from bringing that suit."[15]  Accordingly, because the derivative action contemplated by Wolst would be time-barred and because no other purpose has been identified, she has failed to prove a proper purpose, an essential element of her case under 8 *Del. C.* § 220.  Judgment is entered in favor of Monster.[16]

**IT IS SO ORDERED.**

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:    Register in Chancery-K

---

[15] *Graulich*, 2011 WL 1843813, at *6.

[16] The parties shall bear their own costs.  Wolst had a proper purpose, but for the time-bar aspect of her action.  Whether the *American Pipe* doctrine should be extended in these circumstances was a question not free of doubt.