**Jose Dlg. DIAZ, et al., Plaintiffs,**

v.

**TRUST TERRITORY OF the PACIFIC ISLANDS; Janet McCoy, High Commissioner of the Trust Territory of the Pacific Islands, and United States of America, Defendants–Appellees.**

**Mitchell Aaron, and Ignatius Ken, et al., Applicants in Intervention–Appellants.**

**No. 88–2819.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1989.

Decided June 2, 1989.

W.H. Whitaker, Micronesian Legal Services Corp., Saipan, MP, for applicants in intervention-appellants.

Garry Grimmer and Traylor T. Mercer, Carlsmith, Wichman, Case, Mukai and Ichiki, Saipan, CM, for defendants-appellees.

Before GOODWIN, Chief Judge, HUG, and TANG, Circuit Judges.

GOODWIN, Chief Judge:

Mitchell Aaron and Ignatius Ken appeal the denial of their motion to intervene in this action and to vacate the dismissal of their class action claim that the Trust Territory of the Pacific Islands' ("TTPI" or "TT") government salary schedules unlawfully discriminated against TT citizens (Micronesians) and third-country nationals.

## FACTS AND PROCEEDINGS

During the relevant period the TT salary schedules paid higher salaries to U.S. citizens than to TT citizens or third-country nationals. During the formative years of what are now the Commonwealth of the Northern Marianas Islands, Federated States of Micronesia, Republic of the Marshall Islands, and Republic of Palau, much of the government work was performed by U.S. citizens.

The action as originally filed on January 10, 1984, included 252 named plaintiffs and a class of unnamed workers consisting of both TT citizens and third-country nationals, employed throughout all of the former districts of the TT, including the Commonwealth of the Northern Marianas Islands ("CNMI").

Soon after filing the complaint, the plaintiffs moved to consolidate their case with a related class action, *Temengil v. TTPI*, Civ. No. 81–0006 (D.N.M.I.), or, in the alternative, to intervene in *Temengil*. *Temengil* had been filed in 1981, alleging a similar claim on behalf of a more limited class: TT citizens employed within the CNMI. The district court denied plaintiffs' motion to consolidate or to intervene, and instead dismissed from this litigation all claims covered by the *Temengil* action.

Subsequent events showed that plaintiffs' counsel was not prepared to litigate on behalf of a Micronesia-wide class. On June 16, 1985, the TT served on the plaintiffs interrogatories focusing on the existence and identity of the class outside the CNMI. On October 10, 1985, the TT filed a motion to compel answers to its interrogatories and a request for costs. As the TT points out, the non-CNMI class members generally reside in foreign jurisdictions, with employment records and other materials outside the range of both the district court's process and the TT government's control.

On November 14, 1985, plaintiffs' counsel filed an affidavit stating that he and TT counsel had "agreed on a partial amendment to the complaint to eliminate certain categories of plaintiffs...." This amendment would "obviate the need to answer certain TT's interrogatories." The next day, November 15, 1985, the parties stipulated to dismissal of all claims relating to employment outside of the CNMI, and TT counsel withdrew all interrogatories relating to such claims.

The same day the district court signed an order prepared by TT counsel stating:

> The dismissal of Plaintiffs' claims relating to employment outside the Northern Mariana Islands are [sic] hereby approved. The Court finds that individual notice to putative class members is not required, pursuant to F.R.C.P. 23(e).

No notice was provided to the plaintiff class. The record does not indicate any inquiry by the district court into whether class members would be prejudiced by dismissal.

The principal question on this appeal is whether the trial judge properly dismissed the class claims without notice to the class or inquiry into possible prejudice.

On November 29, 1985, plaintiffs filed their First Amended Complaint, which redefined the class to include (1) TT citizens in executive, administrative, and supervisory positions (M–EAS positions) within the CNMI, and (2) third-country nationals employed within the CNMI.

On January 2, 1986, the parties stipulated that TT citizens in M–EAS positions were included within the *Temengil* class, and should therefore not be included in this case, that the remaining plaintiffs were third-country nationals, and that the number of remaining plaintiffs was not sufficient to continue as a class action. Pursuant to this stipulation, the district court ordered dismissal of the M–EAS plaintiffs, and continued the action as one of individual, named third-country nationals who had been employed within the CNMI by the TT government.

On June 12, 1987, those plaintiffs remaining in court were granted partial summary judgment on the issue of liability against the TT. At the same time, the United States' motion for summary judgment was granted and the United States was dismissed as a defendant. On November 30,

1987, the TT agreed to identify and compute back-pay awards for the remaining plaintiffs. No final judgment had been issued as of February 17, 1988.

On February 17, 1988, Aaron and Ken ("intervenors") filed a motion to intervene and to vacate the November 15, 1985, dismissal of the class whose claims arose from employment outside the CNMI. If the dismissal were vacated, they would pursue the class claims of TT citizens employed outside the CNMI (several thousand employees), part of the class dismissed in the November 15, 1985, order.

The district court denied the motion to intervene, ruling that no notice to the class of the November 15, 1985, dismissal was required by Rule 23(e), Fed.R.Civ.P., and that intervenors were not unduly prejudiced by the earlier dismissal.

## JURISDICTION

Denial of a motion to intervene under Rule 24(a)(2), Fed.R.Civ.P., is immediately appealable. *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 527 (9th Cir.1983). The motion to intervene was denied by an order entered May 2, 1988. Intervenors filed a notice of appeal 31 days later, on June 2, 1988. Under Rule 4(a), Fed.R.App.P., a notice of appeal must be filed within 30 days after entry of the order appealed, "but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry."

Intervenors claim that they fit within the 60–day rule, because (1) the United States is a party, (2) the TT is an agency of the United States for purposes of Rule 4(a), and (3) the TT High Commissioner, also a defendant, is an officer of the United States for purposes of Rule 4(a). The TT contests each of these assertions.

■ *Is the United States a Party?* The United States was dismissed as a defendant on June 12, 1987. However, the United States need not be a party at the time an appeal is taken for the appeal to fit within the 60–day rule. *Division of Labor Law Enforce. v. Stanley Restaurants,* 228 F.2d 420, 423 (9th Cir.1955) (United States' claims against debtor had been satisfied during course of litigation and United States was no longer an interested party at time of appeal, yet "action is one to which the United States is a party" and appeal governed by 60–day rule). It may be enough that the United States *was* a party at an earlier stage.

Further, as noted by intervenors, the TT government was dissolved by the Compact of Free Association Act, P.L. 99–239, 99 Stat. 1770, 1771 (1986). Under the Compact, "[i]n any claim against the Government of the TTPI, the Government of the United States shall stand in the place of the Government of the TTPI." Pub.L. 99–239, Sec. 201, [Art. VII, Sec. 174(c) ], 99 Stat. at 1811. Thus, even though the United States was dismissed as a named defendant, it has assumed the role of surety for the TT for purposes of this litigation, and continues to be a party on that basis.

*Is the TT an agency of the United States?* Even if the United States were not a party, the TT was an agency of the United States for purposes of Rule 4(a). The TT relies on *In re Hoag Ranches,* 846 F.2d 1225, 1227 (9th Cir.1988), in its argument that it is not a U.S. agency for purposes of Rule 4(a). *Hoag Ranches* held that the Stockton Production Credit Association was not a U.S. agency for purposes of Rule 4(a), although it was federally chartered. That case noted "the concern with routing cases through government attorneys, ... underlies the 60–day provision in Rule 4(a)(1)...." *Id.* at 1229. *Hoag Ranches* listed six factors considered in making similar determinations (under 28 U.S.C. § 1345 and Fed.R.Civ.P. 12(a)):

(1) the extent to which the alleged agency performs a governmental function;

(2) the scope of government involvement in the organization's management;

(3) whether its operations are financed by the government;

(4) whether persons other than the government have a proprietary interest in the alleged agency and whether the

government's interest is merely custodial or incidental;

(5) whether the organization is referred to as an agency in other statutes; and

(6) whether the organization is treated as an arm of the government for other purposes, such as amenability to suit under the Federal Tort Claims Act.

846 F.2d at 1227–28.

■ Under the factors listed in *Hoag Ranches,* the TT government should be considered an agency of the United States for purposes of Rule 4(a). It performs a governmental function; the President appoints the TT High Commissioner, its executive, with the advice and consent of the U.S. Senate; its operations are largely paid for by the U.S. Treasury; no other persons have a proprietary interest in the TT government; and the U.S. government's interest is not "merely custodial." Although the TT government is represented by private counsel for this appeal, the litigation decisionmaking process includes the U.S. government.

The TT government has been considered a government agency for some purposes but not for others. *Compare McComish v. Commissioner,* 580 F.2d 1323 (9th Cir. 1978) (TT not an "agency" for purposes of Internal Revenue Code § 911(a)(2)) *with Groves v. United States,* 533 F.2d 1376 (5th Cir.) (reaching opposite conclusion), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976); *see generally, People of Saipan v. United States Dept. of Interior,* 502 F.2d 90, 94–95 (9th Cir.1974), *cert.*

*denied* 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761 (1975); *Callas v. United States,* 253 F.2d 838, 839–841 (2d Cir.1958). The TT government is a hybrid. Nevertheless, under *Hoag Ranches* it is surely an agency of the United States for purposes of Rule 4(a).

The 60–day rule applies both because the United States is a party and because the TT government is an agency of the United States for purposes of Rule 4(a). We therefore need not consider whether the TT High Commissioner is an officer of the United States. The notice of appeal was timely and we address the merits.

## DENIAL OF THE MOTION TO INTERVENE

Intervenors argue that the district court erred in "not making any pre-dismissal determination as to the propriety of the dismissal or the necessity for notice." They claim that notice to the class was required by both Rule 23(e), Fed.R.Civ.P., and the Due Process Clause.

If the claims of the intervenor class were properly dismissed without notice, then intervenors lack any "interest" in the remaining claims and the motion to intervene was properly denied. If, on the other hand, the November 15, 1985, dismissal is vacated as improper, intervention should be allowed so that intervenors can pursue their class claims.[1]

### A. Does Rule 23(e) Apply to the November 15, 1985 Order?

*1. Was the November 15, 1985 order a dismissal?* The TT government relies on

---

**1.** In order to intervene of right under Rule 24(a)(2), a party must demonstrate (1) an interest in the property or transaction which is the subject of the action, (2) impairment of that interest, and (3) inadequate representation by existing parties. Further, the motion to intervene must be timely. Fed.R.Civ.P. 24(a)(2).

[A] member of a class should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court.

Advisory Committee Note to the 1966 Amendment, Rule 24, Fed.R.Civ.P. Here, representation was obviously inadequate. Given the reasons for delay, and the lack of prejudice to other parties, intervenors meet Rule 24(a)(2)'s

timeliness requirement. *See Petrol Stops Northwest v. Continental Oil Co.,* 647 F.2d 1005, 1009 (9th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 639 (1981). If the November 15, 1985, dismissal was in error, intervenors meet all Rule 24(a)(2) requirements.

Rule 60(b), Fed.R.Civ.P., contains an additional timeliness requirement, that a motion to vacate be filed within "a reasonable time." A dismissal without proper notice falls under either Rule 60(b)(4) or Rule 60(b)(6). Therefore, the one year time limit for relief under Rule 60(b)(1), (b)(2), and (b)(3) does not apply. The motion to intervene was timely, coming before final judgment and only a few weeks after intervenors first learned of the November 15, 1985, dismissal.

*Payne v. Travenol Laboratories, Inc.,* 673 F.2d 798 (5th Cir.), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 605 (1982), and *Bantolina v. Aloha Motors, Inc.,* 75 F.R.D. 26, 31 (D.Haw.1977), in its argument that the November 15, 1985, order was not a "dismissal or compromise" within Rule 23(e).

In *Payne,* a class representative plaintiff withdrew with the result that the plaintiff class was redefined to exclude black males. The court did not consider such a narrowing of a class to be a dismissal under Rule 23(e). The court remarked:

> The plaintiffs have not argued that the redefinition of the class in this case is a dismissal within the meaning of Rule 23(e), and we do not consider it to be one.

*Payne,* 673 F.2d at 812 n. 14.

In *Bantolina,* the representative plaintiffs withdrew as class representatives and the court determined that the action could not go forward as a class action unless a new representative was found. The class action failed for lack of an adequate representative. Further, Rule 23(d)(4)

> provides that the court may order "the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly." Thus, Rule 23(d)(4) provides a procedure to purge a complaint and action of an improper class action without "dismissing" the class action.

*Bantolina,* 75 F.R.D. at 31.

Similarly, if the court determines for any reason that class certification should be denied, it can thereafter dismiss the class allegations without notice. In other words, Rule 23(e) notice is not required where the dismissal is involuntary. *Roper v. Consurve, Inc.,* 578 F.2d 1106, 1110 (5th Cir. 1978), *aff'd on other grounds sub nom Deposit Guaranty Nat'l Bank v. Roper,*

445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *Gaston v. [Calhoun] County Bd. of Ed.,* 88 F.R.D. 356 (N.D.Miss.1980). As these cases demonstrate, courts have recognized numerous methods for avoiding Rule 23(e) notice. *See generally* Herbert Newberg, 2 *Newberg on Class Actions* §§ 11.63, 11.69 (Shepard's/McGraw–Hill, 2d ed. 1985) (discussing procedural steps to avoid Rule 23(e) notice requirement).

*Payne, Bantolina,* and the other cases are not without their critics. The *Payne* dissent points out that dropping a representative plaintiff pursuant to Rule 21 is the functional equivalent of voluntary dismissal, as its effect will be to deny absent class members relief. 673 F.2d at 798 (Goldberg, J. dissenting).

■ In any event, this case is unlike *Payne, Bantolina,* or the other cited cases. Here the court and parties treated the November 15, 1985, order as a voluntary dismissal. The November 15, 1985, order, did not attempt to convert the attorneys' agreement into an involuntary dismissal. The district court did not determine that the class action could not go forward, for lack of a proper representative or for any other reason. The court merely approved the parties' decision to dismiss the non-CNMI class. It was an entirely voluntary dismissal for purposes of Rule 23(e).

*2. Does Rule 23(e) apply to pre-certification dismissals?* Whether Rule 23(e) applies to pre-certification class actions—cases containing class allegations but not yet certified as class actions—has never been squarely addressed by this Circuit.[2]

One of the earliest cases interpreting Rule 23(e) held that it applied to pre-certification dismissals and required notice to the putative class. *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 42 F.R.D. 324 (E.D.Pa.1967). The facts of *Philadelphia Electric* presented a strong case

---

**2.** Intervenors rely on *City of Inglewood v. Los Angeles,* 451 F.2d 948, 951 (9th Cir.1972), and on appeal following remand, 508 F.2d 1283, 1284 (1974), for the proposition that Rule 23(e)'s applicability to precertification class actions is beyond question. *City of Inglewood* cites *Philadelphia Electric* for the idea that in the interim between filing and certification, a complaint

alleging a class claim must be treated as a class action "for purposes of dismissal or compromise under Rule 23(e)." While both *City of Inglewood* appeals cite this language from *Philadelphia Electric,* in neither appeal was applicability of Rule 23(e) an issue. The first appeal involved jurisdictional amount; the second involved standing.

for requiring notice, where (1) the proposed settlement attempted to compromise the claims of the class, not just of the named plaintiffs, (2) the action had begun within a week of expiration of the limitation period, (3) approximately 100 petitions for intervention had been filed, all of which would be barred by the statute of limitations if class certification were denied. Some courts, however, read *Philadelphia Electric* as requiring Rule 23(e) notice before any pre-certification dismissal of a class action. *See Simer v. Rios,* 661 F.2d 655, 665 (7th Cir.1981) (listing these early cases), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982).

In 1974, in *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713, the Supreme Court held that the filing of a class action tolls the statute of limitations on all individual claims covered by the class action. *American Pipe* eliminated one concern over potential prejudice from dismissal of pre-certification class actions, as it became possible for members of a class to pursue their individual claims after dismissal of the class action. Since *American Pipe,* courts have moved away from the idea that notice is required for all pre-certification dismissals. At the same time, there is disagreement on whether Rule 23(e) applies to pre-certification dismissals.

*Shelton v. Pargo,* 582 F.2d 1298 (4th Cir.1978), held that Rule 23(e) does not apply prior to class certification. *Shelton* took the approach that a case with class allegations should not be considered a true class action until a class has been certified. The court drew a negative inference from the Supreme Court's statement that "[o]nce a suit is certified as a class action it may not be dismissed or compromised without approval of the court. Rule 23(e)." *Id.*

at 1303 (quoting *Sosna v. Iowa,* 419 U.S. 393, 399 n. 8, 95 S.Ct. 553, 557 n. 8, 42 L.Ed.2d 532 (1975)); *see also Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 332 n. 5, 100 S.Ct. 1166, 1171 n. 5, 63 L.Ed.2d 427 (1980) (repeating same language). *Shelton* assumed that before a class is certified, approval is not required pursuant to Rule 23(e). Finally, the *Shelton* court noted that

the primary purpose of 23(e) was to insure that an absentee class member, against whom an order of dismissal with prejudice would be *res judicata,* should be afforded an opportunity to be heard before any such order was entered. The necessity for court approval to achieve such purpose normally, though, exists only after the action has been certificated as a class action, since any order entered in the uncertificated case binds solely the individual plaintiff and not absentee class members.

582 F.2d at 1303. The court concluded that prior to class certification, Rule 23(e) does not apply.[3]

*Shelton* seems inconsistent with *American Pipe*'s statement that "there remain no conceptual or practical barriers in the way of holding that the filing of a timely class action complaint commences the action for all members of the class as subsequently determined.... A federal class action is no longer 'an invitation to joinder' but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." 414 U.S. at 550, 94 S.Ct. at 764. We also question whether the Supreme Court's language in *Sosna v. Iowa* and *Roper* can fairly be read as implying that only certification creates a "class action" for purposes of Rule 23(e).

**3.** Although finding Rule 23(e) inapplicable, *Shelton* went on to note that the court's supervisory powers under Rule 23(d)(4) authorize it to require notice when appropriate, in order to guard against abuses by the representative plaintiffs. Notice is within the court's discretion, and "[i]f neither loss of benefits to the class nor evidence of collusive agreement is present, notice of dismissal is unnecessary." *Id.* at 1310, (*quoting* Newberg, *Class Actions* § 4960

at 406 (1st ed)). In all cases, the court should hold a hearing to

determine whether the proposed settlement and dismissal are tainted by collusion or will prejudice absent putative members with a reasonable "reliance" expectation of the maintenance of the action for the protection of their interests.

*Id.* at 1315.

■ Other circuits to consider the issue have held that Rule 23(e) applies before class certification. *See Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d.Cir.1970) ("a suit brought as a class action should be treated as such for purposes of dismissal or compromise, until there is a full determination that the class action is not proper"); *Glidden v. Chromalloy American Corp.*, 808 F.2d 621, 626–27 (7th Cir.1986). Wright & Miller also support application of Rule 23(e) to pre-certification class actions. C. Wright, A. Miller & M. Kane, 7B *Federal Practice and Procedure*, § 1797 at 346–350 (2d ed.1986). These courts and commentators take the basic *Philadelphia Electric* approach: during the interim between filing and certification, a court must assume for purposes of dismissal or compromise that an action containing class allegations is really a class action.

The Ninth Circuit's statement in *City of Inglewood*, 508 F.2d at 1284, approves of this general majority approach. Further, the principle that cases containing class allegations be treated as class actions until they are either certified or refused certification is consistent with *American Pipe* and is closest to the plain language of Rule 23(e). We therefore adopt the majority approach and hold that Rule 23(e) applies before certification.

**B. Was Rule 23(e) Applied Correctly?**

Intervenors argue that the district court's failure to follow proper Rule 23(e) procedure requires that the dismissal be vacated.

*1. Court Approval.* Under Rule 23(e), the court must approve any dismissal or compromise of a class action. The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members, and therefore must inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial. *See Newman v. Stein*, 464 F.2d 689 (2d Cir.), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). Even *Shelton*, 582 F.2d at 1315, would require a hearing

to make this inquiry, although not pursuant to Rule 23(e).

At such a hearing, the district court should inquire into possible prejudice from (1) class members' possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances, (2) lack of adequate time for class members to file other actions, because of a rapidly approaching statute of limitations, (3) any settlement or concession of class interests made by the class representative or counsel in order to further their own interests. *Id.; Larkin General Hospital, Ltd. v. American Telephone and Telegraph Co.*, 93 F.R.D. 497 (E.D.Pa.1982).

In this case the district court approved dismissal of the non-CNMI claims, but did not, on the record, make any inquiry whether the dismissal would prejudice the absent members of the class.

■ The court's duty to inquire into a settlement or dismissal differs before and after certification. Before certification, the dismissal is not *res judicata* against the absent class members and the court does not need to perform the kind of substantive oversight required when reviewing a settlement binding upon the class. *Id.* at 501 (citing A. Miller, *An Overview of Federal Class Actions: Past, Present, and Future* (Federal Judicial Center Monograph 1977)). In no pre-certification dismissal would the court reject the dismissal and require anything more than notice to the class and an opportunity to intervene.

Accordingly, if notice was not required, then the failure to make a proper inquiry in 1985 would be harmless error and the order dismissing claims arising from employment outside the CNMI would be free from attack in this appeal.

*2. Notice to the Class.* Rule 23(e) requires that "notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Notice to the class of pre-certification dismissal is not, however, required in all circumstances.

■ Notice of pre-certification dismissal has three purposes. First, the notice requirement protects a *defendant* by preventing a plaintiff from appending class allegations to her complaint in order to extract a more favorable settlement. "[N]o litigant should be permitted to enhance his own bargaining power by merely alleging that he is acting for a class of litigants." *Philadelphia Electric*, 42 F.R.D. at 328. A plaintiff is forced to consider the duties she will owe to the putative class, even if she hopes to reach an individual settlement before class certification. The notice requirement prevents plaintiffs from appending frivolous, "boiler plate" class claims or class claims they never intend to litigate. *See Simer v. Rios*, 661 F.2d at 665; *Shelton*, 582 F.2d at 1310–11; *Muntz v. Ohio Screw Products*, 61 F.R.D. 396, 398 (N.D.Ohio 1973); *Yaffe v. Detroit Steel Corp.*, 50 F.R.D. 481, 483 (N.D.Ill.1970). On the other hand, countervailing policies in favor of settlement support interpreting Rule 23(e) so as not to prevent settlement of individual claims and dismissal of class allegations without notice, so long as representative plaintiffs do not receive disproportionate recoveries and the absent class members do not suffer prejudice. *Shelton*, 582 F.2d at 1311; 2 *Newberg on Class Actions* § 11.63 at 503, n. 407 (2d ed.1985).

In this case, the class allegations arising from employment outside the CNMI do not appear to be frivolous. Intervenors offer no evidence that the class allegations were "boiler plate" added in an effort to get a quick, advantageous settlement for the named plaintiffs. On the other hand, the complete lack of district court inquiry in 1985 leaves us unable to determine whether the non-CNMI class allegations were brought in order to gain added settlement leverage or whether any concessions were made by defendants in return for dismissal of the non-CNMI claims.

In any event, other methods are available to prevent abusive class action filings, most obviously early class certification. Rule 23(c) provides that a class is to be certified "as soon as practicable after the commencement of an action brought as a class action." If courts press ahead with class certification, few problems are likely to arise. If a plaintiff appends class claims to increase leverage for an individual settlement, the defendant can draw any attempts at individual settlement to the court's attention. Such manuevering would make the plaintiff an inadequate class representative, and a motion for denial of class certification would be in order. *See Munoz v. Arizona State Univ.*, 80 F.R.D. 670 (D.Ariz.1978); *Lyon v. Arizona*, 80 F.R.D. 665 (D.Ariz.1978). Of course, the court has the power to sanction a plaintiff who brings frivolous class claims. Rule 11, Fed.R.Civ.P.

■ Absent any indication that *these* plaintiffs actually appended class allegations in an attempt to get favorable individual settlements, there is no reason to require notice here as a deterrent to hypothetical abusive plaintiffs.

Second, notice protects the class from objectionable structural relief, trade-offs between compensatory and structural relief, or depletion of limited funds available to pay the class claims. *Simer v. Rios*, 661 F.2d at 665. Here, the non-CNMI class claims were dismissed; they were not compromised. The remaining claims were litigated; they were not settled. And there is no question of structural relief, since the TT government no longer employs the intervenor class.[4]

Third, notice of dismissal protects the class from prejudice it would otherwise suffer if class members have refrained from filing suit because of knowledge of the pending class action. *Shelton*, 582 F.2d at 1314–15; *Magana v. Platzer Shipyard, Inc.*, 74 F.R.D. 61, 69–70. The likelihood of prejudice, resulting from reliance on the filing of the class action, compounded by the impending expiration of the statute of limitations at the time the class allegations

---

4. The TT employees located outside the Northern Marianas Islands were transferred to other governmental entities by 1980 or 1981. These areas are now part of the Federated States of Micronesia, the Republic of the Marshall Islands, or the Republic of Palau.

are dismissed, is intervenors' best argument that notice should have been required.

■ In denying the motion to vacate, the district court stated that the intervenors' "procrastination or indifference" was the cause of their predicament.[5] Yet, a class member has no duty to intervene, opt out, or take any other action regarding a class action until the class has been certified and notice of class membership sent. *American Pipe*, 414 U.S. at 552, 94 S.Ct. at 765. *American Pipe* clearly undercuts the district court's reasoning. 2 *Newberg on Class Actions* § 11.63 at 504–05 (2d ed. 1985). The district court erred in concluding that a lack of action by the class indicated a lack of reliance on the filing of the class action.

Intervenors argue that had they received notice, they would have objected at the time of the November 15, 1985, dismissal, and would have pursued the class claims. They did not receive actual notice of the dismissal until 1988, at which time they promptly moved to intervene. By February 18, 1988, the statute of limitations had expired on all the non-CNMI class' claims. Further, they note, the statute of limitations on many of the class members' claims expired soon after the November 15, 1985, dismissal. If not allowed to intervene, their claims will be barred. Intervenors claim this is prejudice of the type requiring Rule 23(e) notice.

Although intervenors present no affidavits showing that class members relied on the initial filing of the class allegations, they argue that given the large number of persons in the class and the context of this litigation, the court should assume that members of the class knew about the filing of the class complaint through a "coconut grapevine," relied on that complaint, and that notice was therefore required to prevent prejudice. The discriminatory TT government salary scale had been an item of controversy for decades, this lawsuit and *Temengil* being only the latest chapters. The TT government employed many thousands of persons, and was the major source of wage employment throughout the Trust Territory. In 1985, the district court should have considered the possibility that class members had knowledge of the lawsuit.

Intervenors submit that the possibility of reliance on the filing of the class action is enough to require notice. They point out that many courts have assumed the existence of reliance based upon the mere filing of the action and the possibility of publicity resulting from the filing. *See, e.g., Gupta v. Penn Jersey Corp.*, 582 F.Supp. 1058 (E.D.Pa.1984). The Seventh Circuit recognized the possibility of reliance in *Glidden v. Chromalloy*, 808 F.2d at 627, and required approval (and inquiry into possible prejudice) before a dismissal without notice would be affirmed.

Intervenors also point out that the time period from dismissal to expiration of the statute of limitations is one factor to be considered in determining prejudice. Although the running of the statute of limitations is of less concern since *American Pipe*, 414 U.S. 538, 94 S.Ct. 756 (holding that filing of a class action tolls the statute of limitations), it remains a factor. *See e.g., Glidden v. Chromealloy*, 808 F.2d at 627; 2 *Newberg on Class Actions* § 8.19 at

---

5. The district court based its refusal to vacate the dismissal on a determination that no specific prejudice had been documented:

Intervenors allege that the TTPI violated their rights in 1978 and before by practicing discriminatory wage policies. In 1981, hundreds of similarly situated individuals filed suit alleging the same violation. *See Temengil v. TTPI*, Civ. No. 81–00006 (D.N.M.I.1979)[sic]. Intervenors failed to speak up at this time. In 1984, Diaz et al. filed this suit alleging the same thing. Intervenors were never notified that they were originally parties to the suit. Yet they still never raised the issues in this or any other court that the court is aware of. On November 15, 1985, Intervenors were dismissed from the suit. On February 17, 1988, over two years after dismissal and ten years after the alleged violations, Intervenors filed this motion claiming the dismissal had prejudiced their right to redress their grievance against the government. The predicament in which Intervenors now find themselves can be attributed solely to their procrastination or indifference in raising their claims against the TTPI.

Order of May 2, 1988.

135–36 (2d ed. 1985); Wheeler, *Predismissal Notice and Statutes of Limitations in Federal Class Actions After American Pipe and Const. Co. v. Utah*, 48 So.Cal.L. Rev. 771 (1975). Lack of time from dismissal until expiration of the statute of limitations makes it likely the class will learn of the dismissal too late.

Little time remained after the November 15, 1985, dismissal until the statute of limitations would expire on the majority of the class claims. Many TT government employees were transferred to work in local governments during 1978, and their claims became completely barred during the year following dismissal; some claims were barred within the month following dismissal. Also, the class members belong to a subsistence economy, and are separated from each other by hundreds or thousands of miles of ocean. Intervenors argue it would be extremely unrealistic to expect class members would monitor this litigation, and quickly learn that their claims had been dismissed. We agree with intervenors that there was at least a strong possibility of prejudice from the dismissal because of the running of time and the deficiencies in communications among thousands of islands scattered over thousands of miles of ocean.

Very few cases involving a voluntary pre-certification dismissal have actually held notice not required. Some, such as *Bantolina*, 75 F.R.D. 26 (D.Haw.1977), and *Gaston*, 88 F.R.D. 356 (N.D.Miss.1980), followed determinations that the class could not be certified, and do not fall into the category of voluntary dismissals. *Larkin General Hospital*, 93 F.R.D. 497 (E.D.Pa. 1982), is one outright pre-certification dismissal where notice was not required. In *Larkin General Hospital*, however, there was no possibility of prejudice because identical class allegations had been filed in another district. There was no chance that the class would be left out of court; notice would have merely wasted money.[6] In *Larkin General Hospital*, moreover, the district court held a hearing before making the studied determination that there was no possibility of prejudice.

In this case, the likelihood that members of the class had knowledge of the litigation, and the short time before expiration of the statute of limitations made prejudice likely. Given the possibility of prejudice from the November 15, 1985, dismissal of all claims by non-CNMI employees, the district court erred in not requiring notice to the non-CNMI class.

Intervenors moved to vacate the dismissal of their claims within a few weeks of becoming aware that the claims had in fact been dismissed. But for the lack of notice they would have intervened in November, 1985, to litigate on behalf of their class. The lack of notice delayed their entry into the case by several years. It should not bar their claims altogether. The November 15, 1985, dismissal should be vacated and intervention allowed.

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

6. The order denying consolidation or intervention in *Temengil* and dismissing those portions of the class already covered by *Temengil* falls into the category of dismissals where prejudice is not possible.