PREFERRED MSO OF AMERICA–AUSTIN LLC, Individually and as a Representative of a Class of Similarly Situated Persons and on Behalf of the General Public, Plaintiff,

v.

QUADRAMED CORPORATION, *et al.,* Defendants.

No. 99–7705 AHM (RZx).

United States District Court, C.D. California.

Nov. 3, 1999.

ORDER GRANTING DEFENDANT'S MOTION TO STAY PENDING ALTERNATIVE DISPUTE RESOLUTION

MATZ, District Judge.

## INTRODUCTION

On January 15, 1999, Plaintiff filed a complaint as a class action in California Superior Court for the County of Los Angeles, alleging various causes of action against Defendant QuadraMed ("Defendant") resulting from Y2K date-change problems with Defendant's DOS-based EZ–CAP software program.[1] Several months later, on July 20, 1999, Congress enacted the Y2K Act. 15 U.S.C. § 6601 *et seq.* The Y2K Act applies to all cases brought after January 1, 1999 containing allegations of Y2K problems. 15 U.S.C. § 6603(a). Pursuant to 28 U.S.C. § 1441(b) and the removal provision of the Y2K Act, 15 U.S.C. § 6614, Defendant removed this case to this Court on July 26, 1999.

On August 19, 1999, Defendant employed a procedure authorized by 15 U.S.C. § 6606(f) to inform Plaintiff that it treated Plaintiff's complaint as the notice

1. The EZ–CAP software program is a practice management system for independent physician associations, medical groups, and other organizations that deal with managed health care delivery. In essence, plaintiff claims that the inability to input dates after Decem- ber 31, 1999 has rendered the DOS system useless, that Defendant refused to correct the problems free of charge, and that Defendant coerced it and other customers to purchase a new Windows-based, Y2K-compliant program at substantial additional cost.

required under 15 U.S.C. § 6606(a). Defendant's Exh. 2. Defendant also notified Plaintiff that it was "willing to negotiate with Preferred MSO toward the goal of reaching a settlement of Preferred MSO's claims against QuadraMed. Further, QuadraMed [was] willing to engage in alternative dispute resolution [ ("ADR") ]." Defendant's Exh. 2.

Plaintiff filed a First Amended Complaint ("FAC") on August 25, 1999. The FAC also is styled as a class action. On September 7, 1999, Plaintiff informed Defendant that it was "not interested in discussing the claims in this case on the individual non-class terms" that Defendant suggested. Defendant's Exh. 3. Plaintiff also stated that "[i]f [Defendant] does not respond to the [first amended] complaint we filed in Federal Court within twenty days of service of that complaint, we will act accordingly." Defendant's Exh. 3.

On September 17, 1999, Defendant filed this Motion to Stay or Dismiss Plaintiff's Complaint. Defendant seeks a stay under 15 U.S.C. § 6606(f) "to permit the parties to engage in ADR or pursue other efforts to resolve this dispute without litigation." [2] Because Defendant has a right to a stay and to require Plaintiff to engage in ADR under the Y2K Act, the Court GRANTS Defendant's Motion to Stay. [3]

## DISCUSSION

### I. THE Y2K ACT

Defendant relies on the language of the Y2K Act to support its Motion to Stay. In enacting the Y2K Act, Congress made the following findings:

Many information technology systems, devices, and programs are not capable of recognizing certain dates in 1999 and after December 31, 1999, and will read dates in the year 2000 and thereafter as if those dates represent the year 1900 or thereafter or will fail to process dates after December 31, 1999. 15 U.S.C. § 6601(a)(1)(A).

It is appropriate for the Congress to enact legislation to assure that the year 2000 problems described in this section do not ... create unnecessary caseloads in Federal courts and to provide initiatives to help businesses prepare and be in a position to withstand the potentially devastating economic impact of such problems. 15 U.S.C. § 6601(a)(4).

Congress encourages businesses to approach their disputes relating to year 2000 computer date-change problems responsibly, and to avoid unnecessary, time-consuming, and costly litigation about Y2K failures, particularly those that are not material. Congress supports good faith negotiations between parties when there is such a dispute, and if necessary, urges the parties to enter into voluntary, nonbinding mediation rather than litigation. 15 U.S.C. § 6601(a)(8).

Congress explicitly stated that two of the purposes of the Y2K Act were (1) "to encourage private and public parties alike to resolve disputes relating to year 2000 computer date-change problems by alternative dispute mechanisms in order to avoid costly and time-consuming litigation [and] to initiate those mechanisms as early as possible....", 15 U.S.C. § 6601(b)(3),

---

**2.** The Notice of Motion is ambiguous, perhaps purposely so, in that Defendant does not explicitly state that it seeks a stay to correct, or "remediate" the defect. The evidence before the Court suggests, however, that "remediation" is not feasible, or (in any event) is not in the works, because Defendant no longer markets a DOS-based program but an entirely different, Windows-based program. To fix the DOS-based program would be like installing a defibrillator in a long-buried corpse. Hence, the only realistic construction of Defendant's request for time to "resolve this dispute" is that it is meant to apply to a possible monetary or other business settlement.

**3.** Because the Court grants Defendant's Motion to Stay, it will not decide Defendant's Motion to Dismiss. If alternative dispute resolution efforts fail, Defendant may re-file that motion.

and (2) "to lessen the burdens of interstate commerce by discouraging insubstantial lawsuits while preserving the ability of individuals and businesses that have suffered real injury to obtain complete relief." 15 U.S.C. § 6601(b)(4).

The Y2K Act delineates specific procedures to be followed in a Y2K action.

> Before commencing a Y2K action . . ., a prospective plaintiff in a Y2K action shall send a written notice by certified mail . . . to each prospective defendant in the action. The notice shall provide specific and detailed information about—
>
> (1) the manifestations of any material defect alleged to have caused harm or loss;
>
> (2) the harm or loss allegedly suffered by the prospective plaintiff;
>
> (3) how the prospective plaintiff would like the prospective defendant to remedy the problem;
>
> (4) the basis upon which the prospective plaintiff seeks that remedy; and
>
> (5) the name, title, address, and telephone number of any individual who has authority to negotiate a resolution of the dispute on behalf of the prospective plaintiff.

15 U.S.C. § 6606(a). The statute then provides that

> [w]ithin 30 days after receipt of the notice specified in subsection (a), each prospective defendant shall send by certified mail . . . a written statement acknowledging receipt of the notice, and describing the actions it has taken or will take to address the problem identified by the prospective plaintiff. . . . The written statement shall [also] state whether the prospective defendant is willing to engage in alternative dispute resolution. 15 U.S.C. § 6606(c).

The Y2K Act also provides that if

> the prospective defendant responds and proposes remedial action it will take, or offers to engage in alternative dispute resolution, then the prospective plaintiff **shall** allow the prospective defendant an additional 60 days from the end of the 30-day notice period to complete the proposed remedial action or alternative dispute resolution before commencing the legal action against the prospective defendant. 15 U.S.C. § 6606(e)(1) (emphasis added).

The Y2K Act states, as to the Prelitigation Notice requirement,

> "For the purposes of applying this section to a Y2K action that is maintained as a class action in Federal or State court, the requirements of the preceding subsections of this section apply only to named plaintiffs in the class action." 15 U.S.C. § 6606(j).

The Y2K Act also addresses the situation applicable here—*i.e.,* when plaintiff sued before providing notice of its intent to do so. It states,

> If a defendant determines that a plaintiff has filed a Y2K action without providing the notice specified in subsection (a) . . . the defendant may treat the plaintiff's complaint as such a notice by so informing the court and the plaintiff in its initial response to the plaintiff.
>
> If any defendant elects to treat the complaint as such notice—
>
> (1) the court shall stay all discovery and all other proceedings in the action for the appropriate period after filing of the complaint; and
>
> (2) the time for filing answers and all other pleadings shall be tolled during the appropriate period. *Id.*

15 U.S.C. § 6606(f).

## II. THE Y2K ACT REQUIRES PLAINTIFF TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION

Plaintiff argues that Defendant's Motion to Stay should be denied because (1) a stay to permit remediation would be absurd since Defendant repeatedly refused to repair the defect in the DOS-based program; (2) there is no requirement to engage in

ADR; (3) Plaintiff should not be required to go along with Defendant's offer to engage in ADR, because the offer was limited to the named plaintiff's claims rather than to those of the entire class, and (4) a sixty day extension has already been provided. For the reasons discussed below, the Court finds that the Y2K Act requires the parties to engage in ADR in this case. Accordingly, a sixty (60) day stay is granted.

### A. Requiring These Parties To Engage In ADR Although A Complaint Has Been Filed Would Further The Purposes Of The Y2K Act

In the Y2K Act, Congress found that "[i]t is appropriate for the Congress to enact legislation to assure that the year 2000 problems described in this section do not ... create unnecessary caseloads in Federal courts...." 15 U.S.C. § 6601(a)(4). Congress also explicitly stated that one of the purposes of the Y2K Act is "to encourage private and public parties alike to resolve disputes relating to year 2000 computer date-change problems by alternative dispute mechanisms in order to avoid costly and time-consuming litigation [and] to initiate those mechanisms as early as possible...." 15 U.S.C. § 6601(b)(3). Therefore, the Y2K Act provides that if after receiving a prelitigation notice under 15 U.S.C. § 6606(a), a prospective defendant offers to engage in ADR, "the prospective plaintiff **shall** allow the prospective defendant an additional 60 days ... to complete the ... alternative dispute resolution". 15 U.S.C. § 6606(e)(1) (emphasis added).

■ Plaintiff nevertheless asserts that if a defendant treats a filed complaint as notice under § 6606(f), nothing in the Act requires a stay of another 60 days. Nor does 15 U.S.C. § 6606(f) require plaintiff to participate in mediation, argues plaintiff, particularly where as here, a defendant is not willing to do so on all the grounds set forth in the complaint. Plaintiff offers no authority for its contentions and a plain reading of the statute does not support them. To achieve the Act's overall stated purposes Section 6606(f) must be read to require a plaintiff to participate in ADR when a defendant timely expresses willingness to do so.

Once a defendant chooses to treat the complaint as the required notice, "the Court *shall* stay all discovery" and "the time for filing ... pleadings *shall* be tolled" for what the statute refers to as "the appropriate period." 15 U.S.C. § 6606(f)(1)(2). (Emphasis added.) What is "the appropriate period?" Did Congress mean the same 60 days provided in § 6606(e)? Or did Congress intend to have the trial court specify a different period, one that would take into account the different circumstances arising from the fact that litigation has been commenced? [4]

To set up a meaningful ADR procedure usually takes some time. The mechanism, personnel, fee arrangements and calendaring often prove problematical. To provide for a period shorter than 60 days might be unrealistic and could result in thwarting the purposes of the statute. The Court therefore will define "appropriate" to mean 60 days.

The next question, however, has no answer in the statute: 60 days from when?

---

**4.** In an attempt to determine Congressional intent with regard to the term "the appropriate period" as used in 15 U.S.C. § 6606(f), the Court reviewed the legislative history of the Y2K Act. On February 24, 1999, Draft Y2K Legislation was introduced in the Senate. 145 Cong. Rec. S1913–03. In the Draft Y2K Legislation, the term "90 days" was initially used. *Id.* On April 27, 1999, amendments to the Y2K legislation were submitted by Senators McCain and Lott. 145 Cong. Rec. S4287–01. Both amendments replaced the term "90 days" with the term "the appropriate period"—but without explanation. A computer word search of the legislative history for the term "appropriate" failed to produce any insight into the definition of "the appropriate period" or the reasons for its use.

From the defendant's "presumptive time of receipt" of the complaint, which could be 7 days after it was filed, or perhaps 7 days after it was mailed? (*See* 15 U.S.C. § 6606(c)(4).) From actual receipt? From the expiration of the first 30 days after receipt? From submission of the defendant's request to pursue ADR? From plaintiff's rejection of the request? From the filing of a motion to stay? From the granting of a motion to stay? These are only some of the possible "start times."

It is unnecessary for this Court to discuss the various considerations that arguably warrant (or militate against) using the above "start times" for the running of the 60 days. Because of the following factors present here, the court will tailor an approach meant to be both practical and fair to both sides. The factors are:

● Plaintiff first filed this action in January 1999, more than nine months ago.

● Defendant appears to have been, and to remain, grudging (at best) about working out a business resolution, although it complied with the Y2K Act procedural requirement on a timely basis.

● Plaintiff's current business needs (*i.e.*, software programs) have been addressed, and there is no clear, much less compelling, need to litigate this case at breakneck speed. Nor is there a basis to award injunctive relief, and Plaintiff has not moved for any.

Accordingly, the 60 day stay that this Order hereby is granting shall be calculated as follows:

1. The "start date" is August 19, 1999, when Defendant communicated the request for ADR.

2. The "running" of the 60 days shall be tolled from September 7, 1999, the date that Plaintiff rejected the Defendant's request, until the date this Order is filed. Thereafter, it shall continue to run.

3. Upon completion of the 60 days, since Defendant already prepared a substantive motion to dismiss, Defendant's time to move, answer or otherwise respond to the FAC shall be limited to seven (7) days.[5]

### B. Plaintiff Is Required to Participate in ADR Although Defendant Will Not Negotiate Claims of Putative Class Members

Section 6606(j) of the Y2K Act provides that in an action "maintained" as a class action, the notification requirements in section 6606 "apply only to named plaintiffs in the class action." Plaintiff Preferred MSO is the only named plaintiff in this action. The status of the putative class has not yet been determined under Fed.R.Civ.P. 23. Defendant has stated that it is "willing to negotiate with Preferred MSO toward the goal of reaching a settlement of Preferred MSO's claims against QuadraMed. Further, QuadraMed is willing to engage in alternative dispute resolution." Defendant's Exh. 2.

Although it opposes participating in ADR at all, Plaintiff argues that if it is required to engage in ADR then Defendant is required to negotiate on a class-wide basis. In response, Defendant as-

---

**5.** Plaintiff argues that "the 60-day period in which QuadraMed seeks to 'remediate' or engage in ADR ... commenced running on August 19, 1999 [the date Defendant suggested ADR]. Sixty days from August 19 is October 19, thus by the time this motion is before the Court, the 60-day period will have expired." Opposition at n. 3. Under the facts here, this argument is misplaced. Not until September 7, 1999, 19 days after defendant stated its willingness to engage in ADR, did Plaintiff

refuse to participate. At that point, Plaintiff stated that "[i]f your client does not respond to the [first amended] complaint we filed in Federal Court within twenty days of service of that complaint, we will act accordingly." Defendant's Exh. 3. Given that this response forced Defendant to sue in order to test its right to a 60 day stay, it is inappropriate for Plaintiff to claim that the 60 days has come and gone.

serts that it does not want to, and is not required to, negotiate anything other than Plaintiff's individual claims. At the October 25, 1999 hearing on this matter, Plaintiff requested the opportunity to brief the issue of the scope of any proposed ADR. The Court permitted the parties to file supplemental briefing on this issue.

Under Section 15(a) of the Act, 15 U.S.C. § 6614, a lawsuit may be maintained as a class action only if it "satisfies all other prerequisites established by applicable Federal or State law, including applicable rules of civil procedure...." Section 6614(c)(3) of the Y2K Act explicitly cross-refers to Rule 23 of the Federal Rules of Civil Procedure.

Plaintiff cited a series of cases in its supplemental brief for the proposition that a lawsuit denominated as a class action is to be treated as a class action upon filing of the complaint, even before certification of the class. *Diaz v. Trust Territory of the Pacific Islands*, 876 F.2d 1401 (9th Cir.1989) (trial court improperly dismissed pre-certification class claims without notice to class or inquiry into possible prejudice); *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir.1970) (pre-certification class action should be treated as a class for purposes of Fed.R.Civ.P. Rule 23(e) requirements concerning dismissals and settlements); *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (denial of class certification may be appealed by individuals who already settled their claims); *American Pipe and Construction v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (statute of limitations is tolled for all prospective class members upon the filing of the class action). As such, Plaintiff argues that "any required ADR must involve the totality of plaintiff's claims—its own individual claims as well as those on behalf of the putative class." Plaintiff's Supp. Brief at 4:20–21.

■ The Court agrees with Plaintiff's general proposition that during the interim between the filing of a class action lawsuit and the certification of the class, the law-suit must be treated as a class action. *See Diaz*, 876 F.2d 1401. However, that proposition does not lead to the conclusion that Defendant is required to negotiate a settlement on a class-wide basis. In fact, it is permissible for the named plaintiff to settle their individual claims only. What is required for such settlements, even when a class certification has not yet been made, merely is compliance with Fed.R.Civ.P. 23(e). *City of Inglewood v. Unnamed Citizens*, 508 F.2d 1283 (9th Cir.1974). Under Rule 23(e), "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

First, Rule 23(e) requires that any settlement must be approved by the Court.

> [S]ettlement with a class plaintiff before class certification may be available, with approval of the court. Such settlement is more readily available when the suit has just been commenced and little or no publicity about the litigation exists. At this time, there will be little likelihood of reliance by class members on the commencement of the class action, and the risk to the defendant of other suits may be outweighed by the difficulties expected in the present one.

2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg") § 11.13 (1992). A named plaintiff does owe a fiduciary duty to the putative class. *See* Newberg § 11.65. However, the fiduciary duty does not preclude that plaintiff from negotiating a settlement of its individual claims. In fact,

> "The court will approve such an individual settlement only when it is satisfied that absent class members will not otherwise be prejudiced by dismissal of the action, and that the plaintiff and class counsel have not privately benefitted at the expense of the class."

Newberg § 11.13.

Second, notice "shall be given to all members of the class *in such manner as*

*the court directs.*" Fed.R.Civ.P. 23(e) (emphasis added).

> [C]ourts have consistently held that notice to class members is required only when consistent with the rule's purpose—the protection of absent class members.... When the dismissal or settlement of a class action is without prejudice and will not prevent any class member from bringing a subsequent action, courts have held that the notice provision of Rule 23(e) is inapplicable. (citations omitted).

*Austin v. Pennsylvania Department of Corrections,* 876 F.Supp. 1437, 1455 (E.D.Pa.1995) (finding no notice required when proposed dismissal is without prejudice and none of the class members will be precluded from bringing subsequent suit); *see* Newberg § 11.66 ("Broadly interpreted, this language is sufficiently flexible to permit the court to approve a dismissal or a compromise by the named plaintiff individually, but to determine that no class notice at all is required, when the dismissal or compromise will not result in any prejudice to the class.")

 These authorities support Defendant's position that neither it nor Plaintiff is obligated to negotiate the full claims of the putative class. Under § 6606(c)(f) and (j), Defendant was entitled to give notice of its willingness to engage in ADR only with the named plaintiff. Congress did not place additional requirements on a defendant seeking a stay, and this Court will not read any into the statute. Moreover, to condition a defendant's right to the statutorily-mandated ADR mechanism upon his willingness to negotiate claims of yet-to-be-certified class members might invite abuse; some plaintiffs seeking to avoid the application of this feature of the Y2K Act might routinely sue on behalf of an ostensible class, hoping either that a defendant would not seek ADR or that the terms of any settlement would be more favorable.

The parties are encouraged to pursue a possible settlement of all class claims, but it is not a condition of ADR that they do so. In the event that an agreement is reached, the Court will evaluate the reasonableness of the settlement and take the steps necessary and available to protect the putative class.

## CONCLUSION

For the foregoing reasons, this action is stayed under the terms described above. The parties shall participate in good faith in an "ADR" proceeding. If they resolve their differences, they shall promptly notify the Court. If not, they may proceed with this litigation.

IT IS SO ORDERED.