City of Hialeah Employees' Retirement Sys. v Teladoc Health, Inc. (2023 NY Slip Op 50876(U))

[*1]

City of Hialeah Employees' Retirement Sys. v Teladoc Health, Inc.

2023 NY Slip Op 50876(U)

Decided on August 23, 2023

Supreme Court, New York County

Borrok, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 23, 2023
Supreme Court, New York County

City of Hialeah Employees' Retirement System, Plaintiff,
against
Teladoc Health, Inc.,JASON GOREVIC, MALA MURTHY, CHRISTOPHER CARIDI, DAVID B. SNOW, HELEN DARLING, WILLIAM H. FRIST, MICHAEL GOLDSTEIN, CATHERINE JACOBSON, THOMAS G. MCKINLEY, KENNETH H. PAULUS, DAVID L. SHEDLARZ, MARK D. SMITH, Defendant.

Index No. 150834/2022

Plaintiffs by:
Robbins Geller Rudman & Dowd LLP, 58 S Service Road, Suite 200, Melville, NY 11747Abraham, Fruchter & Twersky, LLP, 450 Seventh Avenue, 38th Floor, New York, NY 10123 
Defendants by:
Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019

Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 58, 59, 60, 61were read on this motion to/for DISMISS.

Upon the foregoing documents, the motion to dismiss is granted for two reasons. First, the lawsuit is time barred. The Securities Act of 1933 (the 1933 Act) provides in relevant part:
No action shall be maintained to enforce any liability created under section 77k or 77l(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(a)(1) of this title, unless brought within one year after the violation upon which it is based
(15 USC § 77m). In a previously filed lawsuit (the Illinois Lawsuit), the amended complaint filed by the Plaintiff in that action alleged that the Company (hereinafter defined) first disclosed the alleged misstatements on January 11, 2021 (the January "Bombshell" Disclosure) during an analyst conference (NYSCEF Doc. No. 51, ¶¶ 77-78). Plaintiff then waited until January 26, 2022 to file this action. There was no tolling agreement entered into between the parties and the Plaintiff is not entitled to class action tolling (cf. American Pipe & Const. Co. v Utah, 414 US 538, 553-555 [1974]).[FN1]
As such the lawsuit is untimely and must be dismissed.[FN2]

Second, the Plaintiff has failed to allege a material misstatement of fact. The complaint filed here is predicated on the theory that the Registration Statement (the RS; NYSCEF Doc. No. 55) was materially misleading because the defendant Company—a provider of virtual healthcare services—failed to disclose, in connection with a merger transaction with another healthcare provider, that a surge of membership growth occasioned by the COVID-19 pandemic had been pulled forward prior to the merger and, because the RS indicated that membership growth was important to the Company's revenue growth, the RS should have disclosed that the pipeline for membership growth was to be truncated for the next year — 2021. The problem is however that the RS did disclose the effects of the COVID-19 pandemic and did not otherwise make any projection about membership growth. In fact, the RS set forth historical data, made other accurate statements, and made a 2021 revenue projection which projection the Company met. 
In addition, the record before the Court indicates that the Company did disclose that it had pulled forward its surge in membership in other filings, and that this was in fact discussed on, among other things, an earnings call on April 29, 2020 (NYSCEF Doc. No. 39, at 11-12) - approximately five months before the September, 2020 RS was issued and approximately six months before the October 2020 merger was consummated. Thus, it can not be said that the failure to disclose the timeline for growth in membership was material or would have otherwise affected the "total mix of information" available to investors (DeMaria v Anderse, 318 F3d 170, 180 [2d Cir 2003]; Asay v Pinduouduo Inc., 2020 WL 1530745, at * 9 [SD NY Mar. 30, 2020], affd 2021 WL 3871269 [2d Cir 2021]). The complaint also makes clear that membership did not decline. It had surged during the pandemic to 51.5 million members in a six-month period at the beginning of 2020 and it remained at 51.8 million at the end of 2020 (NYSCEF Doc. No. 35, at 72, 82). Thus, it does not matter that the RS disclaimed that investors could not rely on information not incorporated into the RS (as registration statements typically provide) because this alleged omission of interim membership rate growth and membership pipeline activity was not material and is simply not actionable.
The Relevant Facts and Circumstances
This is a putative class action brought pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the 1933 Act) alleging material misstatements and omissions in the RS, dated September 11, 2020 and effective as of September 15, 2020, issued by Teladoc Health, Inc. (the Company) in connection with its October 30, 2020 merger (the Merger) with Livongo Health, Inc. (Livongo). 
As discussed above, this is not the first lawsuit filed by this Plaintiff alleging violations of the 1933 Act. It is the second. The Illinois Lawsuit was the first. In the Illinois Lawsuit, the Plaintiff alleged violations of the 1933 Act as against the same defendants as in this case (NYSCEF Doc. No. 4, at 1) based on the same alleged omissions.
Significantly, the amended complaint filed in that Illinois Lawsuit alleged that in the months following the Company's merger with Livongo, the Defendants made the January "Bombshell" Disclosure on January 11, 2021:
77. In the months following the Merger, defendants belatedly admitted, and the market learned of, negative facts and trends that existed at the time of the Merger but were not disclosed in the Registration Statement.
78. During a January 11, 2021 analyst conference, defendant Gorevic disclosed that the number of potential members that the Company could add from its existing client base was 13% lower than the 75 million stated in the Registration Statement: "So as you'll see in the next 2 slides, we not only have tremendous opportunity to expand our membership, and we can grow over 65 million members, almost doubling our U.S. membership, just within our existing clients without even adding a new logo"
(NYSCEF Doc. No. 51, ¶¶ 77-78). This lawsuit was not filed until January 26, 2022 — after the time permitted under the 1933 Act had expired. Putting aside this fatal defect requiring dismissal of this lawsuit, the claims also otherwise fail as a matter of law.
By way of background, the Company is a provider of virtual healthcare services, contracting with professional associations who contract with physicians to provide virtual healthcare and services on the Company's platform (NYSCEF Doc. No. 1, ¶ 35). The Company [*2]generates revenue by selling access to the Company's platform and services to clients such as large employers or insurance companies (id., ¶ 36). The Company charges clients a subscription access fee on a per-member-per-month basis, where a member is an individual user of the Company's platform (id., ¶ 37). As alleged, the Company's subscription access revenue is the primary source of the Company's revenue and is driven primarily by how many clients and members it has under contract, with the majority of its members and subscription access revenue coming from the United States. As such, US membership is one of the most important metrics in assessing the Company's success and future prospects (id., ¶¶ 37-39). Thus, the Plaintiff alleges that increasing US members was one of the Company's integral objectives by either adding members from existing clients or by adding new clients (id., ¶ 41). Once the Company's sales force generated a new lead, the potential client became a part of the Company's sales pipeline which lasted for a period of approximately 24 months before a contract was executed and implemented (id., ¶¶ 42-44). 
As alleged, the Company has great advanced insight into its pipeline because in the second and third quarters, potential leads are converted into contracts for the following year (id., ¶¶ 45-47). Given the significance to revenue growth, the Company conducts monthly (and sometimes weekly) review of its potential for revenue including its potential for revenue in the following year (id., ¶¶ 49-52).
In early 2020, as a result of the Covid-19 pandemic, the Company saw a surge in demand for its services (id., ¶¶ 49-56) and when asked about demand in June 2020, Defendant Gorevic indicated on an earnings call that the pipeline remained "robust" (id., ¶ 57).
In August 2020, the Company issued a press release indicating that it had agreed to merge with Livongo in a deal valued at $18.5 billion. The press release provided that pursuant to the terms of the Merger, Livongo shareholders would receive 0.592 Teladoc shares for each Livongo share and following closing, Teladoc shareholders would own 58% and Livongo shareholders would own 42% of the combined Company. The Merger required Livongo shareholder approval (id., ¶¶ 60-61).
The Plaintiff alleges that the Company continued to report significant US membership growth in the lead up to the Merger and otherwise indicated that there was still a lot of opportunity for continued growth (NYSCEF Doc. No. 1, ¶¶ 62-68). However, the Plaintiff alleges that, despite these assurances, the Company's pipeline was virtually depleted, that the rebuilding process would take more than a year following the Merger, and that US memberships would grow as little as 1% in the 18 months following the merger (id., ¶¶ 69-70).
The Company filed the RS in connection with the Merger on September 3, 2020, and it was declared effective as of September 15, 2020. The Company also filed a joint proxy statement and prospectus on September 15, 2020, incorporating various financial reports and other SEC filings for the Company. 
The RS did not make any projection about membership growth.[FN3]
The RS did however make a projection about 2021 revenue. It is undisputed that the Company met its 2021 projection (compare NYSCEF Doc. No. 55, at 121, with NYSCEF Doc. No. 35, at 99). 
The Plaintiff however alleges that the RS was materially misleading because it failed to [*3]disclose that the extraordinary growth in membership tied to the COVID-19 pandemic had been pulled forward to be booked prior to the Merger and that the Company should have disclosed that its pipeline for future membership growth would take more time to rebuild than the market anticipated based on the track record that the Defendants marketed in the RS (NYSCEF Doc. No. 1, ¶¶ 77-82). Thus, the Plaintiff alleges that investors had a false and misleading picture about the future membership growth and cash flows for the Company (id., ¶¶ 89-90).
In this lawsuit,the Plaintiff alleges that, on February 24, 2021 (the February Disclosure), the Company issued a press release revealing the Company's financial results for Q4 2020 and full year 2020 detailing a low membership outlook for 2021 (id., ¶¶ 92-93). The Plaintiff alleges that this negative trend was known by the Company at the time of the Merger and that, as a result of the low membership growth in 2021, the price of the Company's stock fell substantially (id., ¶¶ 96-97).
As discussed above, the Plaintiff brought the Illinois Lawsuit in Cook County, Illinois. In an amended complaint filed in the Illinois Action, the Plaintiff alleged that the Defendants admitted in the January "Bombshell" Disclosure (i.e., over a month before the February Disclosure which they now claim is when they first learned facts of the Company's "material omissions" which allegedly render the RS materially misleading) that the RS was materially misleading (NYSCEF Doc. No. 51, ¶¶ 77-78). When the Defendants moved to dismiss based on lack of personal jurisdiction, the parties agreed by email, dated December 22-23, 2021 (NYSCEF Doc. No. 50) that, if the Plaintiff dismissed the action in Illinois and refiled in New York, counsel for the Defendants would accept service of process. No agreement was reached on tolling.
The Plaintiff sued in New York by summons and complaint dated January 26, 2022, more than one year after the January "Bombshell" Disclosure,alleging causes of action for (i) violation of Section 11 of the 1933 Act (first cause of action), (ii) violation of Section 12(a)(2) of the 1933 Act (second cause of action), and (iii) violation of Section 15 of the 1933 Act (third cause of action). 
Discussion
The 1933 Act "protects investors by ensuring that companies issuing securities make a full and fair disclosure of information relevant to a public offering" (Omnicare, Inc. v Laborers Dist. Council Const. Indus., 135 S Ct 1318, 1323 [2015] [internal quotation marks and citation omitted]). The "linchpin" of the 1933 Act "is its registration requirement," which "must contain specified information about both the company itself and the security for sale" (id.). Sections 11, 12, and 15 of the 1933 Act impose "strict liability for material misstatements contained in registered securities offerings" (NECA-IBEW Health & Welfare Fund v Goldman Sachs & Co., 693 F3d 145, 148 [2d Cir 2012]).
I. The Claims Are Time Barred

15 USC §77m provides:
No action shall be maintained to enforce any liability created under section 77k or 77l(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(a)(1) of this title, unless brought within one year after the violation upon which it is based
(15 USC §77m). As discussed above, the Plaintiff alleged in the amended complaint filed in [*4]Illinois that the Company made a January "Bombshell" Disclosure when they disclosed facts that indicated that the RS was materially misleading. This January "Bombshell" Disclosure was made on January 11, 2021. Although not a judicial admission (as not ruled upon by the Illinois Court), it is an admission that the Plaintiff made that can not simply be ignored by filing papers here in New York and now indicating that it was not until the February Disclosure that it was clear that there were "material omissions" in the RS rendering it false and misleading in attempting to evade the statute of limitations provided for in the 1933 Act. This lawsuit was filed on January 26, 2022. It was filed outside of the time period provided for in the 1933 Act. As such, the lawsuit is untimely and must be dismissed. As discussed above, no tolling agreement was in place between the parties permitting the Plaintiff to file in New York and suspending the statute of limitations and inasmuch as these are not absent class members pursing individual claims, American Pipe class action tolling is not available.
II. The Lawsuit Must be Dismissed Because it Fails to State a Claim
On a motion to dismiss pursuant to CPLR 3211, the Court must afford the pleading a liberal construction and accept the facts as alleged in the complaint as true, according the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit any cognizable legal theory (Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
Section 11 of the 1933 Act imposes liability based on the contents of a registration statement, both for what it includes and for what it omits (Omnicare, 1315 S Ct at 1327-1330; In re Uxin Limited Sec. Litig., 2020 WL 1146636, at * 7 [Sup Ct, NY County 2020]). Whether a statement is materially false or misleading is viewed at the time such statement is made — not retroactively, in hindsight (In the Matter of Netshoes Sec. Litig., 64 Misc 3d 926, 933 [Sup Ct, NY County 2019]; Rubenstein v Credit Suisse Group AG, 457 FSupp3d 289, 295-296 [SD NY 2020], citing Charter Twp. of Clinton Police & Fire Ret. Sys. v KKR Fin. Holdings LLC, 2010 WL 4642554, at * 11 [SD NY 2010] ["plaintiff may not plead a Section 11 claim 'with the benefit of 20/20 hindsight' or base the claim on a 'backward-looking assessment' of the registration statement"]). 
Item 303 requires the disclosure of trends or uncertainties that the issuer reasonably expects will have a material, unfavorable impact on revenues or income from continuing operations (Litwin v Blackstone Group, L.P., 634 F3d 706, 716 [2d Cir 2011]). Item 105 requires a discussion of the most significant risk factors making the offer risky or speculative and disclosure where events have occurred that have a material impact on the registrant (Citiline Holdings, Inc. v iStar Financial Inc., 701 FSupp2d 506, 514 [SD NY 2010]). 
Section 12 imposes liability on any person who offers or sells securities pursuant to a prospectus containing material misstatements or omissions of material fact (Mahar v General Electric, 65 Misc 3d 1121, 1129 [Sup Ct, NY County 2019], affd 188 AD3d 534 [1st Dept 2020]). 
In determining whether a misstatement or omissions is material, it must be viewed in the context of all of the defendants' representations taken together and whether it would have misled a reasonable investor (Rombach v Chang, 355 F3d 164, 172 n 7 [2d Cir 2004]). An omission is material if "in light of the information already disclosed to investors there is a substantial likelihood that the disclosure of the [omitted material] would have been viewed by the reasonable investor as having significantly altered the total mix of information [already] made available" (Rubenstein, 457 FSupp3d at 295, citing In re ProShares Trust Sec. Litig., 728 F3d [*5]96, 102 [2d Cir 2013] [citations omitted and alterations and emphasis in original]).
Neither accurate statements about past performance, nor expressions of puffery and corporate optimism are actionable under the 1933 Act (In the Matter of Netshoes Sec. Litig., 64 Misc 3d at 926; Rombach, 355 F3d at 174; Nadoff v Duane Reade, Inc., 107 FedAppx 250, 252 [2d Cir 2004]). 
Simply put, it is undisputed that the RS disclosed accurate historical data (including the effects of the COVID-19 pandemic on its membership), made a projection about 2021 revenue which projection the Company met, and that the Company's membership did not decrease during the relevant time period. Thus, it does not matter that, and the RS was not materially misleading because, the Company accurately indicated that membership growth was a driver of revenue, and there is no actionable omission based on the Plaintiff's argument that the RS omitted disclosing that the pipeline may not have additional growth in the ensuing months. Put another way, it is dispositive that the statements contained in the RS were accurate and that the Company made a 2021 revenue projection which projection it met. As such, under the circumstances, it simply can not be said that any of the statements contained in the RS became misleading or that the alleged "omission" would have affected the "total mix of information" available to investors (DeMaria, 318 F3d at 180; Asay, 2020 WL 1530745, at * 9). Thus, the Section 11 and Section 12 claims fail.[FN4]

Inasmuch as the Section 11 and Section 12(a)(2) claims fail, the Section 15 claims must also be dismissed.
It is hereby ORDERED that the motion to dismiss is granted. 
8/23/2023

Footnotes

Footnote 1:American Pipe tolling applies to absent class members as to their individual claims, not when the same plaintiffs bring successive class actions.

Footnote 2:The Illinois Lawsuit and this lawsuit are based on the same alleged conduct. The Plaintiff can not avoid the statute of limitations simply by not including paragraphs 77-78 of the amended complaint filed in the Illinois Lawsuit describing the January "Bombshell" Disclosure by now alleging that it was actually February 24, 2021 when they first learned of the alleged misconduct. At best, this is disingenuous and, at worst, unethical. For the avoidance of doubt, the result is not changed by the argument that the January "Bombshell" Disclosure "did not include every problem that the company disclosed" or that the disclosures do not perfectly match the Plaintiff's allegations (Yaroni v Pintech Holdings, 2022 WL 1215450, at * 8 [SD NY Apr. 25, 2022]). What matters is that this Plaintiff previously admitted that the January "Bombshell" Disclosure disclosed the basis upon which the RS was allegedly misleading and they did not proceed to prosecute this action within the statute of limitations period provided for by the United States Congress (Staehr v Hartford Fin. Servs. Grp., 547 F3d 406, 427 [2d Cir 2008]; cf. In re Netshoes Litig., 68 Misc 3d 788 [Sup Ct, NY County 2020]).

Footnote 3:This is a case predicating liability under the 1933 Act on omissions which the Plaintiff alleges rendered the RS materially false and misleading.

Footnote 4:Nayani v LifeStance Health Group, Inc., 2023 WL 3260260 (SD NY 2023) does not compel the result urged by the Plaintiff in this case. LifeStance was a mental health company. Significantly, the registration statement (the LifeStance RS) filed in connection with its initial public offering affirmatively represented that retention of its clinicians was central to its success and that it had retained physicians at a rate of 87%, well above the industry average of 77%. The plaintiffs alleged that interim data made the statements in the Lifestance RS materially misleading because in fact LifeStance had seen a marked increase in clinician turnover. In that case, the court (Rakoff, J.), denied the defendant's motion to dismiss, holding that the complaint properly alleged that there was a duty to disclose this "not, strictly speaking, financial information" because "a reasonable investor would view the omission as 'significantly alter[ing] the "total mix" of information made available'" (Nayani, 2023 WL 3260260, at ** 3-4, citing Stadnick v Vivint Solar, Inc., 861 F3d 31, 36 [2d Cir 2017]). Significantly, and unlike Nayani, the Company made no representations about its membership growth rate and the representation that it did make — i.e., its 2021 financial projection, the Company met.